STATE of Wisconsin,Plaintiff-Respondent,

v.

Joseph T. LANGLOIS, Defendant-Appellant.†

Court of Appeals

*No. 2016AP1409–CR. Submitted on briefs May 11, 2017.
—Decided June 28, 2017.*

2017 WI App 44

† Petition for Review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Andrew J. Jarmuz* of The Law Office of *Andrew J. Jarmuz, LLC*, Medford.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald V. Latorraca*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Neubauer, C.J., Reilly, P.J., and Hagedorn, J.

¶ 1. NEUBAUER, C.J. Joseph T. Langlois appeals from a judgment of conviction entered after a jury found him guilty of homicide by negligent handling of a dangerous weapon. He further appeals from an order denying his motions for postconviction relief. Langlois contends that there were errors in the court's instructions to the jury on the defenses of accident and self-defense, which counsel let pass without objection, resulting in Langlois being denied the effective assistance of counsel. We disagree. The court properly instructed the jury that the State had the burden of disproving self-defense beyond a reasonable doubt. The accident and homicide by negligent handling of a dangerous weapon instructions correctly advised the jury that they had to find that Langlois's conduct created an unreasonable and substantial risk of death or great bodily harm. Langlois also contends that the evidence presented was legally insufficient to support a conviction for homicide by negligent handling of a dangerous weapon. Again, we disagree. Thus, we affirm the judgment and order.

## BACKGROUND

¶ 2. Langlois was charged in the stabbing death of his brother, Jacob Langlois, with first-degree reckless homicide. As explained in greater detail below, Langlois stabbed Jacob following an argument and physical altercation over items that Jacob had taken from Langlois.

*Jury Instructions Applicable to the Homicide by Negligent Handling of a Dangerous Weapon Conviction*

¶ 3. At trial, after the conclusion of the presentation of evidence, the State requested that Langlois be charged with the lesser-included offenses of second-

308

degree reckless homicide and homicide by negligent handling of a dangerous weapon. Langlois, in turn, requested instructions on the defenses of self-defense and accident. The State then requested an instruction on retreat. The circuit court granted the requests. Defense counsel did not object to the court's instructions, stating "I'm good with all of it." After the instructions were read to the jury, they were given a copy for use in deliberations. The relevant instructions were as follows:

> Self-defense is an issue in this case. In deciding whether the defendant's conduct was criminally reckless conduct which showed utter disregard for human life or was criminally reckless conduct or was criminally negligent conduct, you should also consider whether the defendant acted lawfully in self-defense.

> The law of self-defense allows the defendant to threaten or intentionally use force against another only if:

> - the defendant believed that there was an actual or imminent unlawful interference with the defendant's person; and

> - the defendant believed that the amount of force the defendant used or threatened to use was necessary to prevent or terminate the interference; and

> - the defendant's beliefs were reasonable.

> The defendant may intentionally use force which is intended or likely to cause death or great bodily harm only if the defendant reasonably believed that the force used was necessary to prevent imminent death or great bodily harm to himself.

¶ 4. The court then instructed the jury on retreat and the elements of first-degree reckless homicide. The

court then returned to the self-defense standard and explained the State's burden of proof:

> You should consider the evidence relating to self-defense in deciding whether the defendant's conduct created an unreasonable risk to another. If the defendant was acting lawfully in self-defense, his conduct did not create an unreasonable risk to another.[1] The burden is on the state to prove beyond a reasonable doubt that the defendant did not act lawfully in self-defense. And, you must be satisfied beyond a reasonable doubt from all the evidence in the case that the risk was unreasonable.

¶ 5. Next, the court instructed the jury as to the accident defense in conjunction with the first-degree reckless homicide charge.

¶ 6. The court then repeated that it was the State's burden to prove beyond a reasonable doubt that the defendant did not act lawfully in self-defense.

¶ 7. At the end of the instruction on first-degree reckless homicide, the court told the jury that if they could not unanimously agree on a verdict as to that count, then it should consider whether Langlois was guilty of second-degree reckless homicide. The court instructed the jury on the elements of second-degree reckless homicide, but the court did not reinstruct them on the defenses of self-defense or accident.

¶ 8. If the jury could not unanimously agree on a verdict as to second-degree reckless homicide, then, the court told the jury, they should consider the count

---

[1] Just prior to this instruction, the court instructed the jury that a finding of criminally reckless conduct, for purposes of first-degree reckless homicide, was conduct that created an unreasonable and substantial risk of death or great bodily harm to another person, and the defendant was aware that his conduct created that risk.

of homicide by negligent handling of a dangerous weapon. The court then gave the following instruction on that count:

> Self-defense is an issue in this case that also applies to the charge of Homicide by Negligent Handling of a Dangerous Weapon. In deciding whether the defendant's conduct was criminally negligent conduct, you should also consider whether the defendant acted lawfully in self-defense.
>
> As I previously indicated, the law of self-defense allows the defendant to threaten or intentionally use force against another only if:
>
> - the defendant believed that there was an actual or imminent unlawful interference with the defendant's person; and
>
> - the defendant believed that the amount of force the defendant used or
>
> - threatened to use was necessary to prevent or terminate the interference; and
>
> - the defendant's beliefs were reasonable.
>
> The defendant may intentionally use force which is intended or likely to cause death or great bodily harm only if the defendant reasonably believed that the force used was necessary to prevent imminent death or great bodily harm to himself.

¶ 9. The court did not reinstruct the jury that the State had the burden of proving beyond a reasonable doubt that Langlois did not act lawfully in self-defense.

¶ 10. On the elements of homicide by negligent handling of a dangerous weapon, the court told the jury the following:

> Before you may find the defendant guilty of this offense, the State must prove by evidence which sat-

311

isfies you beyond a reasonable doubt that the following three elements were present.

. . . .

1. The defendant operated or handled a dangerous weapon.

2. The defendant operated or handled a dangerous weapon in a manner constituting criminal negligence.

3. The defendant's operation or handling of a dangerous weapon in a manner constituting criminal negligence caused the death of Jacob Langlois.

 "Cause" means that the defendant's act was a substantial factor in producing the death.

 Once again, "dangerous weapon" means any device or instrumentality which, in the manner it is used or intended to be used, is likely to produce death or great bodily harm. "Great bodily harm" means serious bodily injury.

. . . .

 "Criminal negligence" means:

 the defendant's operation or handling of a dangerous weapon created a risk of death or great bodily harm; and

 the risk of death or great bodily harm was unreasonable and substantial; and

 the defendant should have been aware that his operation or handling of a dangerous weapon created the unreasonable and substantial risk of death or great bodily harm.

¶ 11. The court reinstructed the jury on the defense of accident.

312

The defendant contends that he was not aware of the risk of death or great bodily harm required for a crime, but rather that what happened was an accident.

If the defendant was not aware of the risk of death or great bodily harm required for a crime, the defendant is not guilty of that crime.

Before you may find the defendant guilty of Homicide by negligent operation of a dangerous weapon, the State must prove by evidence that satisfies you beyond a reasonable doubt that the defendant should have been aware of the risk of death or great bodily harm.

¶ 12. The court reminded the jury that it could not find Langlois guilty of homicide by negligent handling of a dangerous weapon unless they were "satisfied beyond a reasonable doubt that all three elements of the offense . . . ha[d] been proved."

¶ 13. The subsequent general instructions again reminded the jury: "The burden of establishing every fact necessary to constitute guilt is upon the State. Before you can return a verdict of guilty, the evidence must satisfy you beyond a reasonable doubt that the defendant is guilty."

¶ 14. The jury returned a verdict acquitting Langlois of the first- and second-degree reckless homicide counts, but convicting him of the count charging homicide by negligent handling of a dangerous weapon. The court withheld sentence and placed Langlois on probation for five years with various conditions of supervision.

¶ 15. Postconviction, Langlois moved for judgment notwithstanding the verdict, arguing that there was insufficient evidence presented to convict him of homicide by negligent handling of a dangerous weapon because a normally prudent person would not have reasonably foreseen that his conduct exposed another

313

to an unreasonable risk and high probability of bodily harm. Further, Langlois contended, the court's instruction on accident violated his due process rights because the instruction referred to risk without qualifying that the risk had to be unreasonable and substantial. The circuit court denied the motion.

¶ 16. Langlois then moved for a judgment of acquittal, again arguing that the evidence was legally insufficient to support the jury's guilty verdict on homicide by negligent handling of a dangerous weapon. Alternatively, he requested a new trial in the interest of justice because trial counsel's failure to object to the court's instructions to the jury on self-defense and accident deprived him of the effective assistance of counsel. The circuit court denied the motion without an evidentiary hearing.[2]

## ANALYSIS

### *The Law on Ineffective Assistance of Counsel and Instructions to the Jury*

¶ 17. Where, as here, a claimed error in the court's instructions to the jury has been forfeited by trial counsel's failure to object, the error may be

---

[2] Although the circuit court found that its instructions on self-defense were correct, it also concluded that there was no reasonable view of the evidence that supported a self-defense instruction. Because our conclusion that the instructions were not erroneous is dispositive, we address only the former. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (if a decision on one point disposes of the appeal, we need not address the other issues raised); *see also State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground.").

reviewed in the context of a challenge to the effectiveness of counsel's assistance. *State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999).

¶ 18. Under both the Wisconsin and United States Constitutions, in order for a court to find that counsel rendered ineffective assistance, a defendant must show that counsel's performance was deficient and that, as a result of that deficient performance, the defendant was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Thiel*, 2003 WI 111, ¶ 18, 264 Wis. 2d 571, 665 N.W.2d 305.

¶ 19. Counsel's performance is "constitutionally deficient if it falls below an objective standard of reasonableness." *Thiel*, 264 Wis. 2d 571, ¶ 19. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citation omitted). In other words, professionally competent assistance encompasses a "wide range" of conduct, and a reviewing court starts with the presumption that counsel's assistance fell within that wide range. *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

¶ 20. Counsel's deficient performance is constitutionally prejudicial if "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In other words, the prejudice component asks "whether it is 'reasonably likely' the result would have been different." *Richter*, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

¶ 21. The defendant bears the burden on both of these elements. *State v. Roberson*, 2006 WI 80, ¶ 24, 292 Wis. 2d 280, 717 N.W.2d 111.

¶ 22. In order to be entitled to an evidentiary hearing on a postconviction claim alleging ineffective assistance of counsel, the defendant has to allege sufficient material, nonconclusory facts, which, if true, show that he is entitled to relief. *State v. Sulla*, 2016 WI 46, ¶ 26, 369 Wis. 2d 225, 880 N.W.2d 659. This presents a question of law, which is reviewed de novo. *State v. Allen*, 2004 WI 106, ¶ 9, 274 Wis. 2d 568, 682 N.W.2d 433. "[I]f the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing." *Sulla*, 369 Wis. 2d 225, ¶ 27 (citation omitted). This question is reviewed for an erroneous exercise of discretion. *State v. Howell*, 2007 WI 75, ¶¶ 75, 79, 301 Wis. 2d 350, 734 N.W.2d 48.

¶ 23. In order to review Langlois's claim of ineffective assistance of counsel, the propriety of the court's instructions must first be reviewed, for if the

316

court correctly instructed the jury, Langlois's ineffective-assistance-of-counsel claim must fail. *State v. Ziebart*, 2003 WI App 258, ¶ 17, 268 Wis. 2d 468, 673 N.W.2d 369.

¶ 24. A circuit court has broad discretion when instructing a jury. *State v. McKellips*, 2016 WI 51, ¶ 30, 369 Wis. 2d 437, 881 N.W.2d 258. Whether jury instructions are appropriate, given the facts of the case, is a legal issue determined independently of the circuit court. *Ziebart*, 268 Wis. 2d 468, ¶ 16. If the court's instructions to the jury do not accurately state the law, then the court has erroneously exercised its discretion. *McKellips*, 369 Wis. 2d 437, ¶ 30. The court's instructions, however, are not reviewed in isolation, but as a whole to determine their accuracy, viewing them in the context of the entire charge. *Id.* In other words, relief is unwarranted "unless the court is 'persuaded that the instructions, when viewed as a whole, misstated the law or misdirected the jury.'" *Ziebart*, 268 Wis. 2d 468, ¶ 16 (citation omitted).

*The Court's Instructions on Self-Defense*
*Were Not Erroneous*

¶ 25. Viewing the court's instructions to the jury in isolation is exactly the error Langlois makes in advancing his argument. He views the court's instructions to the jury in snippets without considering the instructions as a whole. As the circuit court aptly concluded when denying Langlois's postconviction motions, jury instructions are not erroneous if, as a whole, they adequately and properly inform the jury. Thus, we

317

reject Langlois's challenge to the court's instructions through the conduit of ineffective assistance of counsel.

¶ 26. With respect to the instructions on self-defense, Langlois faults his attorney for not objecting when the court failed to repeat the instruction given in conjunction with first-degree reckless homicide, when instructing on homicide by negligent handling of a dangerous weapon: that the jury must consider the evidence of self-defense in deciding whether Langlois's conduct created an unreasonable risk to another; the prosecution bears the burden of proof beyond a reasonable doubt of establishing that Langlois did not act in self-defense; and that even if the State did prove Langlois was not acting in self-defense, the jury still had to be satisfied beyond a reasonable doubt that Langlois's conduct created an unreasonable risk of death or great bodily harm.

¶ 27. As recounted above, the court did instruct the jury on self-defense as it related to the count charging homicide by negligent handling of a dangerous weapon. In charging the jury on self-defense, the court instructed the jury to consider self-defense for all three offenses. The court said, "Self-defense is an issue in this case," and the jury was directed to consider self-defense "[i]n deciding whether [Langlois's] conduct was criminally reckless conduct which showed utter disregard for human life or was criminally reckless conduct or was *criminally negligent conduct*." (Emphasis added.)

¶ 28. The court then instructed the jury on each element of self-defense. After instructing the jury on the elements of first-degree reckless homicide, the court said that "[t]he burden is on the state to prove beyond a reasonable doubt that the defendant did not

318

act lawfully in self defense." If Langlois was "acting lawfully in self-defense, his conduct did not create an unreasonable risk to another." The jury had to "be satisfied beyond a reasonable doubt from all the evidence in the case that the risk was unreasonable."

¶ 29. When instructing the jury on homicide by negligent handling of a dangerous weapon, while the court did not repeat the State's burden, it reiterated that self-defense was an issue in this case and that self-defense applied to this count. In addition, the court said, "[a]s *I previously indicated,* the law of self-defense allows . . . ." (Emphasis added.) This language incorporated the court's prior instruction as to the burden of proof and that self-defense negated the element that Langlois's conduct created an unreasonable risk to another.

¶ 30. Further, the court specifically told the jury that the State had to prove that Langlois "operated or handled a dangerous weapon in a manner constituting criminal negligence," meaning that, as defined, Langlois's operating or handling of the weapon created an unreasonable and substantial risk of death or great bodily harm. The court did not need to reiterate this element, as Langlois suggests, if the jury was satisfied that the State had disproven self-defense. The court's instructions were clear that if self-defense was disproven, the State still had to meet all of the elements of homicide by negligent handling of a dangerous weapon. Indeed, the court followed up on the specific instructions relating to the three charges with a general instruction, again reminding the jury that the State had the burden to prove every fact necessary to constitute guilt, and the evidence must satisfy the jury beyond a reasonable doubt that Langlois was guilty.

319

¶ 31. For support, Langlois relies solely on *State v. Austin*, 2013 WI App 96, 349 Wis. 2d 744, 836 N.W.2d 833. However, in *Austin*, there was absolutely no instruction on the burden of proof relative to the defense of self-defense. *Id.*, ¶ 7. Further, on the instruction for the defense of others, at least with respect to the counts charging first-degree recklessly endangering safety, the court told the jury that the State bore the burden of disproving defense of others beyond a reasonable doubt. *Id.*, ¶ 8. In juxtaposition—the lack of an instruction on the burden of proof relative to self-defense, with the specific instruction on the burden of proof of defense of others—it was reasonably likely that the jury would have concluded that the defendant bore the burden of proof on self-defense. *Id.*, ¶¶ 6, 11, 17. In other words, the jury would have inferred that the defendant bore the burden of proof on self-defense.

¶ 32. Here, in contrast, there was a specific instruction on the burden of proof relative to self-defense, and the instruction was accurate. While that instruction was made in the context of the charge on first-degree reckless homicide, the court told the jury that self-defense applied to all of the counts, and the court incorporated its prior instruction on self-defense when instructing the jury on homicide by negligent handling of a dangerous weapon by prefacing its instruction with "[a]s I previously indicated, self-defense allows . . . ." The jury had no reason to infer, unlike in *Austin*, that the burden was on the defendant to show that he was acting in self-defense. *See State v. Seifert*, 155 Wis. 2d 53, 70–71, 454 N.W.2d 346 (1990) (concluding that it was proper for the circuit court to refuse to reinstruct the jury in the closing instructions that it may consider the defendant's psychiatric and personal

history in determining his intent or state of mind at the time of the incident because that instruction was given during the general introductory instructions and they adequately covered the law); *Moes v. State*, 91 Wis. 2d 756, 768–69, 284 N.W.2d 66 (1979) (holding that there was no error when the court did not repeat that the State had to prove beyond a reasonable doubt that the defendant was not coerced into committing murder because the reasonable doubt instruction prefaced that entire instruction and at several other points the jury was told that it could find the defendant guilty of first-degree murder only if it determined beyond a reasonable doubt that he had not been coerced and was guilty of first-degree murder).

### *The Court's Instructions on Accident Were Also Not Erroneous*

¶ 33. With respect to the instructions on accident, Langlois faults his attorney for not objecting when the court did not repeat the specific mental state in the accident instruction. Instead of telling the jury that Langlois was not guilty of homicide by negligent handling of a dangerous weapon if he was "not aware of the risk of death or great bodily harm required for a crime," the court should have specified that level of risk was "unreasonable and substantial" or used the term "criminal negligence," which subsumed the "unreasonable and substantial risk of death or great bodily harm" standard.

¶ 34. As with his challenge to the self-defense instructions, Langlois views the court's instructions on accident in isolation rather than as a whole. Immediately preceding the court's instructions on accident,

the court told the jury that the type of risk necessary to establish criminal negligence was that the defendant's operation or handling of a dangerous weapon created a "risk of death or great bodily harm" and that the risk of death or great bodily harm to another was one that was "unreasonable and substantial." The instruction continued that the jury must find that "the defendant should have been aware that his operation or handling of a dangerous weapon created an unreasonable and substantial risk of death or great bodily harm."

¶ 35. Next, the court reinstructed the jury on accident. The court stated that Langlois contended that he was not aware of the risk of death or great bodily harm required for a crime, but rather that what happened was an accident. The jury was then instructed that, if Langlois was not aware of the risk of death or great bodily harm required for a crime, he was not guilty of that crime. Each time, the court qualified the words "the risk of death or great bodily harm" with the phrase *"required for a crime."* (Emphasis added.) The risk required for the crime of homicide by negligent handling of a dangerous weapon was the "unreasonable and substantial" risk that the court had just instructed the jury on when it defined criminal negligence. In other words, the instructions on accident referred the jury back to the *immediately preceding* definition of criminal negligence. The instructions could have again restated the risk required for the crime—substantial and unreasonable—which had also been applied to each of the offenses, but the instructions were not erroneous. The instructions were accurate and made clear that if Langlois was not aware of the risk, as required for the crime, then what happened was merely an accident and Langlois was not guilty of a crime.

¶ 36. In short, the record conclusively demonstrates that the court's instructions to the jury, when viewed in their entirety and not in isolation, were not erroneous. Since the court's instructions were not erroneous, trial counsel's failure to object was not deficient performance. And, since Langlois's claim of ineffective assistance of counsel fails on the deficient performance prong, we need not examine the prejudice prong.

¶ 37. Relatedly, Langlois argues that the erroneous instructions to the jury prevented the real controversy from being tried and denied him due process. But, as we have explained, the instructions to the jury were not erroneous and, thus, the real controversy was tried and Langlois was not denied due process of law.

### The Evidence Was Legally Sufficient to Support Langlois's Conviction

¶ 38. Next, Langlois argues that the evidence was legally insufficient to support his conviction for homicide by negligent handling of a dangerous weapon.

¶ 39. In a challenge to the legal sufficiency of the verdict, an appellate court is tasked with deciding whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. LaCount*, 2008 WI 59, ¶ 25, 310 Wis. 2d 85, 750 N.W.2d 780 (citations omitted). Thus, it is inappropriate to substitute the judgment of this court for that of the jury "unless the evidence is so lacking in probative value and force that no reasonable jury could have concluded, beyond a

reasonable doubt, that the defendant was guilty." *State v. Long*, 2009 WI 36, ¶ 19, 317 Wis. 2d 92, 765 N.W.2d 557. On this issue, the defendant "bears a heavy burden to show the evidence could not reasonably have supported a finding of guilt." *State v. Beamon*, 2013 WI 47, ¶ 21, 347 Wis. 2d 559, 830 N.W.2d 681. The legal sufficiency of the jury's verdict is a question of law reviewed independently of the circuit court. *State v. Booker*, 2006 WI 79, ¶ 12, 292 Wis. 2d 43, 717 N.W.2d 676.

¶ 40. The jury was instructed, consistent with WIS. STAT. § 940.08(1), *see Beamon*, 347 Wis. 2d 559, ¶ 22, that in order to find Langlois guilty of homicide by negligent handling or operation of a dangerous weapon, the State had to prove the following:

1. The defendant operated or handled a dangerous weapon.

2. The defendant operated or handled a dangerous weapon in a manner constituting criminal negligence.

3. The defendant's operation or handling of a dangerous weapon in a manner constituting criminal negligence caused the death of Jacob Langlois.

¶ 41. The court defined "dangerous weapon" as "any device or instrumentality which, in the manner it is used or intended to be used, is likely to produce death or great bodily harm. 'Great bodily harm' means serious bodily injury."

¶ 42. "Criminal negligence" was defined as follows:

the defendant's operation or handling of a dangerous weapon created a risk of death or great bodily harm; and

324

the risk of death or great bodily harm was unreasonable and substantial; and

the defendant should have been aware that his operation or handling of a dangerous weapon created the unreasonable and substantial risk of death or great bodily harm.

¶ 43. "Cause," the court said, meant "that the defendant's act was a substantial factor in producing the death." WIS JI—CRIMINAL 1175.

¶ 44. The court also gave an instruction on self-defense, as we have already recited and will not repeat here. In addition, the court told the jury that Langlois had "no duty to retreat." But, "in determining whether the defendant reasonably believed the amount of force used was necessary to prevent or terminate the interference," the court said, the jury could "consider whether the defendant had the opportunity to retreat with safety, whether such retreat was feasible, and whether the defendant knew of the opportunity to retreat."

¶ 45. The confrontation between Langlois and Jacob occurred when Jacob was packing to leave for the National Guard. Jacob had packed some things that belonged to Langlois and their father, including a video-game system and fishing knives. The mother of Langlois and Jacob, Karen Langlois, went to Jacob's room, and Jacob willingly gave her a fillet knife that belonged to the father of Jacob and Langlois. Karen placed the knife on a nightstand in Jacob's room in front of a toolbox. By then, Langlois had taken the video-game system and left Jacob's room.

¶ 46. However, Langlois returned to the room to see what else of his Jacob had taken. Jacob pushed Langlois out of the room, holding the door against him.

Langlois pushed through the door and Jacob "backed off" and started arguing with Karen again. Langlois went over toward Jacob's bed, asking "what else do you have in here?" The two of them started "wrestling," with Jacob having initiated the contact, and Jacob then placed Langlois in a headlock. Langlois said he "couldn't breathe." Jacob twice asked Langlois if he was done and Langlois testified he "muttered; yes," and Jacob released Langlois from the headlock. At this point, as Langlois acknowledged both during a police interview and cross-examination, he could have left the room, but chose not to.

¶ 47. Instead of leaving, Langlois, who said he was confused, angry, and furious, took the knife from the nightstand, removed the knife from its sheath, and, by Langlois's own words, "held it up threateningly." Indeed, it was undisputed that Langlois held the knife up against his right shoulder with the sharp end pointed out. Jacob did not have a weapon. Langlois yelled at Jacob telling him that he "never liked him" and "always hated him." Jacob kicked Langlois on his right side. Langlois told police that he "reacted, stabbing [Jacob] [in] his chest once," using an extended stabbing motion.

¶ 48. A rational jury could have found that a fillet knife that has a six-inch blade and is normally carried in a sheath, which Langlois admittedly unsheathed and held in a threatening manner at shoulder height with the sharp end pointed out, is a dangerous weapon. *State v. Horton*, 151 Wis. 2d 250, 260–61, 445 N.W.2d 46 (Ct. App. 1989).

¶ 49. A rational jury could have also found that the way Langlois handled the knife constituted criminal negligence. The jury could have rationally rejected the defense of self-defense, concluding that Langlois

did not rationally believe that he was facing an actual or imminent unlawful interference with his person. Rather, Jacob had asked Langlois if he was done, and when he said yes, Jacob released him from the headlock. A rational jury could have concluded that this signaled that Jacob was done interfering with Langlois. This conclusion would have been further informed by the opportunity Langlois had to leave the room without using any force. Instead, Langlois, with expressed feelings of hatred toward his brother, took the fillet knife from the nightstand, removed the knife from its sheath, and held it up at shoulder height with the sharp end pointed out. Langlois thus introduced a deadly weapon into what amounted to a fistfight that had already ended because he was angry that his brother had gotten the better of him. Given that the two had already been involved in a physical altercation involving wrestling and headlocks, Langlois should have been aware that a struggle might ensue and, coupled with how he was handling the knife, that this created an unreasonable and substantial risk of great bodily harm or death that, in fact, resulted in Jacob's death. *Lofton v. State*, 83 Wis. 2d 472, 488–89, 266 N.W.2d 576 (1978).[3]

¶ 50. Alternatively, the jury could have credited Langlois's statement to police that after Jacob kicked

---

[3] Langlois's argument focuses on the evidence most favorable to his defenses of accident and self-defense. He argues, for example, that his conduct of holding the knife in a "defensive position" was "to get Jacob to stop attacking him" and that he was afraid of Jacob attacking him again, which shows that the risk of death or greatly bodily harm that Langlois's conduct posed to Jacob was not unreasonable and substantial but, rather, Langlois was reasonably defending himself. But Langlois errs in suggesting that this is the only reasonable inference to make from the record. It is not, and where there are

him, Langlois "reacted, stabbing his chest once," using an extended stabbing motion, which suggested, at the very least, criminally negligent conduct on Langlois's part.

## CONCLUSION

¶ 51. The court's instructions to the jury were not erroneous and, therefore, trial counsel's assistance was not constitutionally ineffective. There was legally sufficient evidence presented to the jury to sustain its verdict of homicide by negligent handling of a dangerous weapon. Therefore, we affirm the judgment of conviction and the order denying postconviction relief.

*By the Court.*—Judgment and order affirmed.

¶ 52. REILLY, P.J. (*dissenting*). I respectfully dissent as the majority errs by "fixing" the erroneous jury instructions for self-defense and accident by suggesting that the jury consulted instructions from crimes they found Langlois not guilty of. Majority, ¶¶ 32, 35. I find it disingenuous and illogical that the majority believes that a jury may utilize instructions for crimes not under consideration to fix erroneous instructions for the crime under consideration. *See* Majority, ¶¶ 27–29, 32.

¶ 53. The State charged Langlois with one count of first-degree reckless homicide, a Class B felony, subjecting Langlois to sixty years in prison. The State, after presenting its case, apparently was worried that its case was not as strong as it thought and requested the court give instructions on "two other less serious

competing reasonable inferences, we must defer to the one the fact finder made. *See State v. Brown*, 2005 WI 29, ¶ 40, 279 Wis. 2d 102, 693 N.W.2d 715.

charges": second-degree reckless homicide (Class D felony, twenty-five years) and homicide by negligent handling of a dangerous weapon (Class G felony, ten years).[1] The court properly instructed the jury that it was first to consider only the first-degree reckless homicide charge, and only if it found Langlois not guilty of first-degree reckless homicide was it to move on to consider second-degree reckless homicide. The jury was also properly instructed that if it found Langlois not guilty of second-degree reckless homicide, only then was it to move on to consider homicide by negligent handling of a dangerous weapon. The jury found Langlois not guilty of both first- and second-degree reckless homicide, and therefore the instructions (the law) on those two charges were no longer before the jury.

¶ 54. As the court told the jury at the end of the trial: the instructions are "complicated" and "[y]ou're gonna get instructions on some things that you may not even have heard about or thought about." This "complicated" issue was caused not by defense counsel, but by the State who realized late in the game that its case was weak and requested two additional charges necessitating the modifications. The court, the prosecution, and the defense all have the duty to ensure that a jury is properly instructed. The justice system fails whenever a defendant fails to receive his constitutional right to effective assistance of counsel.[2]

---

[1] Second-degree reckless homicide while using a dangerous weapon, under Wis. Stat. § 940.06(1), and homicide by negligent handling of a dangerous weapon, under Wis. Stat. § 940.08, are lesser-included offenses of first-degree reckless homicide. *See* Wis. Stat. § 939.66(2).

[2] This case was brought as a claim for ineffective assistance of counsel as it is well settled under the law that

¶ 55. The jury was instructed that the law of self-defense for homicide by negligent handling of a dangerous weapon is different than the law of self-defense for first- and second-degree reckless homicide. The court, by omission, instructed the jury that self-defense for homicide by negligent handling of a dangerous weapon does not impose upon the State the burden to prove beyond a reasonable doubt that Langlois did not act lawfully in self-defense. The court separately instructed the jury on the law of self-defense as applicable to homicide by negligent handling of a dangerous weapon, but did not include the following, which was provided as the law of self-defense for first- and second-degree reckless homicide in accordance with WIS JI—CRIMINAL 801:

> You should consider the evidence relating to self-defense in deciding whether the defendant's conduct created an unreasonable risk to another. If the defen-

---

"[f]ailure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict." WIS. STAT. § 805.13(3). Here, all parties agree that no objections were made to the proposed jury instructions at the time of trial. Our supreme court determined in *State v. Schumacher*, 144 Wis. 2d 388, 424 N.W.2d 672 (1988), that this court does not have the power to review jury instructions for plain error under the common law where an objection was not preserved. *Id.* at 409; *but see Vollmer v. Luety*, 156 Wis. 2d 1, 13, 456 N.W.2d 797 (1990) (indicating this court may invoke its discretionary reversal power under WIS. STAT. § 752.35 to address jury instruction errors that were waived). Under *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997), this court must abide by these decisions. However, although this court has no power to review unobjected-to jury instructions, the same cannot be said for our supreme court under its more "broad" discretionary authority. *See Schumacher*, 144 Wis. 2d at 406–07.

dant was acting lawfully in self-defense, (his) (her) conduct did not create an unreasonable risk to another. **The burden is on the state to prove beyond a reasonable doubt that the defendant did not act lawfully in self defense.** And, you must be satisfied beyond a reasonable doubt from all the evidence in the case that the risk was unreasonable. (Emphasis added.)

¶ 56. By omitting the above paragraph for homicide by negligent handling of a dangerous weapon, the court, by inference, removed from the State its burden to disprove self-defense and erroneously placed the burden to prove self-defense upon Langlois. The jury was instructed that "it is your duty to follow" the instructions given by the court. The majority's suggestion that the court's use of the phrase "[a]s I previously indicated" incorporated the court's instruction on the law of self-defense applicable to first- and second-degree reckless homicide is an erroneous invitation that juries may search out laws applicable to other crimes so as to convict on a crime under deliberation. Majority, ¶ 29. The court could have given one complete, proper instruction on self-defense and told the jury that it applied to all three crimes, but it did not do so. Instead, the court gave an instruction on self-defense for first- and second-degree reckless homicide and gave a distinctly different instruction for self-defense applicable to homicide by negligent handling of a dangerous weapon.

¶ 57. The burden to disprove self-defense was erroneously removed from the State on the charge of homicide by negligent handling of a dangerous weapon. Counsel was deficient for not objecting. Langlois was prejudiced as there is a reasonable probability of a different result given the jury found Langlois

331

not guilty of first- and second-degree reckless homicide when it was correctly instructed on self-defense.[3]

## Accident

¶ 58. The court's instruction to the jury on the law of "accident" for homicide by negligent handling of a dangerous weapon was also different from the instruction given for "accident" for first- and second-degree reckless homicide. For first- and second-degree reckless homicide, the court told the jury:

> The defendant contends that he did not act with criminally reckless conduct, but rather that what happened was an accident.
>
> If the defendant did not act with the criminally reckless conduct required for a crime, the defendant is not guilty of that crime.
>
> Before you may find the defendant guilty of First Degree Reckless Homicide, the State must prove by evidence that satisfies you beyond a reasonable doubt that the defendant caused the death of Jacob Langlois by criminally reckless conduct.

For homicide by negligent handling of a dangerous weapon, the court told the jury:

> The defendant contends that he was not aware of the risk of death or great bodily harm required for a crime, but rather that what happened was an accident.
>
> If the defendant was not aware of the risk of death

---

[3] In order to show prejudice, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Dillard*, 2014 WI 123, ¶ 95, 358 Wis. 2d 543, 859 N.W.2d 44 (citation omitted).

or great bodily harm required for a crime, the defendant is not guilty of that crime.

Before you may find the defendant guilty of Homicide by negligent operation of a dangerous weapon, the State must prove by evidence that satisfies you beyond a reasonable doubt that the defendant should have been aware of the risk of death or great bodily harm.

¶ 59. WISCONSIN JI—CRIMINAL 772 advises the court to "describe mental state" within the definition of accident, and the court properly did so for the charges of first- and second-degree reckless homicide as it specifically referenced "criminally reckless conduct." In contrast, the court's instruction as to accident for homicide by negligent handling of a dangerous weapon did not reference criminal negligence directly, and instead inserted a definition of criminal negligence that was erroneous as it omitted the requirement that the "risk of death or great bodily harm" be "unreasonable and substantial."

¶ 60. The error in the instruction on "accident" is plain. Two key elements were completely removed from the instruction—unreasonable and substantial—and those missing words changed the application of the law and lessened the State's burden. The majority suggests that "the instructions on accident referred the jury back to the *immediately preceding* definition of criminal negligence," Majority, ¶ 35, but nowhere does the instruction on accident for homicide by negligent handling of a dangerous weapon include the phrase "criminal negligence."[4]

---

[4] To the extent the majority seeks to rely on the reference to "criminally reckless conduct" utilized in the instruction for accident under first- and second-degree reckless homicide to suggest that the jury should have applied the definition of

## Conclusion

¶ 61. Trial counsel was clearly deficient, and Langlois was clearly prejudiced as the erroneous instructions removed the State's burden to prove beyond a reasonable doubt that Langlois did not act lawfully in self-defense and eliminated the State's burden to prove that Langlois should have been aware of the unreasonable and substantial risk of death or great bodily harm by his actions. I respectfully dissent.

"criminal negligence" to accident for homicide by negligent handling of a dangerous weapon, Majority, ¶ 35, we know as fact that the jury was confused by such terminology. During deliberations the jury sought clarification about the word "criminally," asking for a definition of the word in the "context of the phrase 'criminally reckless conduct.'" Judge Muehlbauer noted the word was "not defined separate from the entire phrase 'criminally reckless conduct,'" and told the jury to refer to the "requirements of the definition of 'criminally reckless conduct' as listed under the elements section for first-degree reckless homicide."