COURT OF APPEALS
DECISION
DATED AND FILED

September 19, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1216-CR**

Cir. Ct. No. 2020CF130

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JERRY L. GRAVEEN,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Lincoln County: JAY R. TLUSTY, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jerry Graveen appeals from a judgment convicting him of two felonies arising out of a high-speed car chase involving multiple law

enforcement officers, and from an order denying his postconviction motion for resentencing. The sole issue on appeal is whether Graveen's trial counsel provided ineffective assistance by failing to obtain and review a squad car video of the car chase prior to Graveen's sentencing hearing. As a result of this failure, Graveen alleges that his counsel was unable to adequately represent him at the sentencing hearing. We conclude that Graveen cannot demonstrate prejudice from his counsel's alleged failure and therefore affirm.

## BACKGROUND

¶2      Graveen pled no contest, as a repeat offender, to one count of a vehicle operator fleeing or eluding an officer and one count of second-degree reckless endangerment. The presentence investigation report (PSI) described the offenses as they were set forth in the criminal complaint. This description included allegations that: (1) at one point during the pursuit, a law enforcement officer had to "jump out of the way" of Graveen's vehicle; (2) at another point, Graveen's vehicle "made contact with the passenger side of [the squad car of the same law enforcement officer]" as the officer was attempting to block Graveen's path; and (3) Graveen resisted arrest after his vehicle got stuck in a pond, and he needed to be electronically shocked before he could be handcuffed.

¶3      In response to the allegations from the complaint, Graveen told the PSI agent that: (1) he "never came close to hitting an officer with [his] truck;" (2) a squad car struck Graveen's vehicle from behind, propelling his vehicle into making contact with another squad car; and (3) Graveen was not trying to resist arrest but merely attempting to "hold his cell phone above the water" after the arresting officers threw him into the water. The PSI also included a law enforcement officer's victim statement that he had suffered "an occasional

nightmare about being run over by cars and not being able to move out of the way" after Graveen "almost ran [him] over and then intentionally struck [his] squad car."

¶4      At the sentencing hearing, the circuit court's description of the offense included the facts disputed by Graveen. The court observed that Graveen was lucky that he had not killed or injured any pedestrians or other motorists during the extended chase—during which the vehicle driven by Graveen exceeded 115 miles per hour at times; traveled on a U.S. highway, several county highways, city streets, residential driveways and lawns, and a gravel pit; and failed to stop at several stop signs.

¶5      The circuit court then noted that it could not recall having sentenced any defendants with more than Graveen's seventy-eight prior convictions. The court placed particular emphasis on Graveen's two prior convictions for fleeing or evading an officer, which the court viewed as part of an "undesirable behavior pattern" very similar to the current offense.

¶6      The circuit court acknowledged that Graveen was hardworking and had a number of positive character traits. However, given Graveen's extensive criminal history and his having absconded or been revoked from prior terms of supervision, the court concluded that "close rehabilitative control" was necessary. Taking into account its primary objective of protecting the community and secondary objective of punishment, the court sentenced Graveen to concurrent terms of three years' initial confinement followed by two years' extended supervision on the fleeing count and four years' initial confinement followed by four years' extended supervision on the reckless endangerment count.

¶7    Graveen filed a postconviction motion for resentencing based upon ineffective assistance of counsel. Graveen alleged, among other things not at issue in this appeal, that his trial counsel had failed to obtain and review the dashboard camera video of the car chase. Graveen claimed that had his trial counsel reviewed the video, he could have presented the circuit court with "relevant context" and "mitigating actions" Graveen took during the chase. Without doing so, Graveen further argues, his counsel inadequately represented him at the sentencing hearing.

¶8    Following an evidentiary hearing during which portions of the dashboard camera video were viewed by the circuit court and explained by Graveen, the court made a factual finding that Graveen's trial counsel had, in fact, failed to obtain and review the dashboard camera video. However, the court noted that the PSI already contained Graveen's version of the vehicle chase, and the court stated that what Graveen viewed as "inaccuracies" in the complaint and PSI's description of the offenses were "essentially differences of opinions of what occurred." In addition to observing that the segments of the video regarding those disputed points were "subject to interpretation," the court pointed out that the entirety of the video would have shown "the magnitude" of the lengthy high-speed chase that endangered the public and law enforcement.

¶9    The circuit court determined there was no reasonable probability that the outcome of the sentencing would have been different if portions of the dashboard camera video had been played at the sentencing hearing. The court therefore concluded that Graveen had failed to demonstrate prejudice on his ineffective assistance claim, and it denied the postconviction motion. Graveen now appeals that decision.

**DISCUSSION**

¶10   To establish a claim of ineffective assistance, a defendant must prove two elements: (1) deficient performance by counsel; and (2) prejudice resulting from that deficient performance. *State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89. We will not set aside the circuit court's factual findings about what actions counsel took or the reasons for them unless they are clearly erroneous. *See State v. Balliette*, 2011 WI 79, ¶19, 336 Wis. 2d 358, 805 N.W.2d 334. However, whether counsel's conduct violated the constitutional standard for effective assistance is ultimately a legal determination that this court decides de novo. *Id.* We need not address both elements of the test if the defendant fails to make a sufficient showing on one of them. *See State v. Swinson*, 2003 WI App 45, ¶58, 261 Wis. 2d 633, 660 N.W.2d 12.

¶11   Here, we conclude that Graveen cannot demonstrate prejudice. A defendant proves prejudice by demonstrating there is a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The "reasonable probability" standard is tied to the reviewing court's confidence in the outcome, and the "likelihood of a different result must be substantial, not just conceivable." *Sholar*, 381 Wis. 2d 560, ¶45; *State v. Langlois*, 2017 WI App 44, ¶20, 377 Wis. 2d 302, 901 N.W.2d 768. Like the circuit court, we see no reasonable probability of a different sentencing result if Graveen's trial counsel had reviewed the dashboard camera video prior to sentencing.

¶12   First, the dashboard camera video does not establish that any of the facts about the chase as asserted in the complaint and PSI were actually inaccurate. The video supports the assertions that Graveen's vehicle hit the side of a squad car

under its own momentum before it was pushed into the bumper of that squad car and that Graveen resisted arrest. It is not possible to see whether the officer "jumped" out of the way of Graveen's vehicle or merely backed away as Graveen's vehicle drove around the officer's squad car because the officer's legs are not visible behind the squad car. There is nothing in the video, however, that would prevent the circuit court from finding the officer's own account of having jumped back to be credible.

¶13 Second, the circuit court's explanation of the reasons for its sentence did not hinge upon whether the officer had to jump out of the way of Graveen's vehicle. Rather, the court emphasized the dangerous nature of the totality of the vehicle chase, in addition to Graveen's lengthy criminal record. The video plainly supports the court's description of the chase as being high speed and endangering the public and law enforcement, and there is no dispute as to Graveen's criminal record—which included two prior fleeing convictions. We therefore conclude that the court properly denied Graveen's motion for resentencing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).