# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP1409-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent, |
| |    v. |
| | Joseph T. Langlois, |
| |         Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 371 Wis. 2d 302, 901 N.W.2d 768
PDC No:  2017 WI App 44 - Published

| | |
|---|---|
| OPINION FILED: | June 20, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 17, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Washington |
|   JUDGE: | James K. Muehlbauer |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | ABRAHAMSON, J., dissents (opinion filed). |
| | R.G. BRADLEY, J., dissents (opinion filed). |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed and an oral argument by *Andrew J. Jarmuz* and *The Law Office of Andrew J. Jarmuz, LLC*, Edina, Minnesota.

For the plaintiff-respondent, there was a brief filed and an oral argument by *Donald V. Latorraca*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP1409-CR
(L.C. No. 2014CF43)

STATE OF WISCONSIN             :        IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent,**

    **v.**

**Joseph T. Langlois,**

    **Defendant-Appellant-Petitioner.**

**FILED**

**JUN 20, 2018**

Sheila T. Reiff
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals, State v. Langlois, 2017 WI App 44, 377 Wis. 2d 302, 901 N.W.2d 768, affirming the Washington County circuit court's[1] judgment of conviction for Joseph T. Langlois ("Langlois") for homicide by negligent handling of a dangerous weapon, contrary to Wis. Stat. § 940.08(1) (2015-16),[2] and its denial of Langlois' postconviction motions.

---

[1] The Honorable James K. Muehlbauer presided.

[2] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

¶2 On February 4, 2014, Langlois and his brother, Jacob, got into a fight. The fight turned physical and Langlois, having picked up a fillet knife from a nearby nightstand, stabbed Jacob, fatally injuring him. The State charged Langlois with first-degree reckless homicide by use of a dangerous weapon, contrary to Wis. Stat. § 940.02(1), and, at trial, sought conviction on any one of three offenses: the offense charged, or either of two lesser-included offenses, second-degree reckless homicide by use of a dangerous weapon, contrary to Wis. Stat. § 940.06(1), or homicide by negligent handling of a dangerous weapon, contrary to Wis. Stat. § 940.08(1). The jury found Langlois guilty of homicide by negligent handling of a dangerous weapon.

¶3 Post-conviction, Langlois filed two motions, both of which challenged the sufficiency of the evidence and the jury instructions relating to Langlois' defenses of accident and self-defense. Langlois argued that omissions in the jury instructions were reversible error on any one of three grounds: ineffective assistance of counsel, due process violation, or interest of justice. The circuit court denied both motions, concluding that the evidence was sufficient and that the jury instructions were not erroneous. Langlois appealed.

¶4 The court of appeals affirmed. Langlois, 377 Wis. 2d 302, ¶¶1, 51. It held that the circuit "court's instructions to the jury, when viewed in their entirety and not in isolation, were not erroneous." Id., ¶36. It therefore concluded that trial counsel was not ineffective because failure

2

to object to correct instructions is not deficient performance; that there was no due process violation; and that Langlois was not entitled to a new trial in the interest of justice. Id., ¶¶36-37. The court of appeals also concluded that the evidence was sufficient to support the verdict because a rational jury could have found that the knife was a dangerous weapon; that the way Langlois handled the weapon constituted criminal negligence; and that Langlois had not acted in self-defense where he had had the opportunity to leave the room without using force. Id., ¶¶48-49, 51. Langlois petitioned for review.

¶5 On review, we consider two issues. First, we consider whether the jury instructions were erroneous. We conclude that they were not, because, taken as a whole, they accurately state the law. Consequently, we conclude that there is no basis for Langlois' claim of ineffective assistance of counsel, there is no due process violation, and reversal in the interest of justice is not appropriate. Second, we consider whether there was sufficient evidence to support the jury's verdict. We conclude that there was, because the evidence, viewed most favorably to sustaining the conviction, supports a finding of guilt beyond a reasonable doubt.

¶6 Thus, we affirm the decision of the court of appeals.

I. FACTUAL AND PROCEDURAL BACKGROUND

3

¶7    The events of February 4, 2014, are not subject to significant dispute.[3]   Langlois, then 17 years old, had stayed home from school that day, and Jacob, then 20 years old, was home packing some things before leaving for the military.[4]   When Karen, their mother, came home from work at about 1:40 p.m., they were both in their rooms.   She checked on Langlois first, who told her that Jacob was packing for boot camp and that he was packing some items that did not belong to him, including Langlois' Xbox and one of their father's fillet knives.[5]   This behavior was not atypical of Jacob, who had a tendency to take things that did not belong to him.[6]

¶8    Karen then went to check on Jacob, whose room was right next to Langlois'.   She asked him about taking things that did not belong to him and Jacob became agitated.   Langlois walked into Jacob's room at that point, picked up the Xbox, and

---

[3] This recitation of the facts is based primarily on the testimony of Karen Langlois, the mother of both the victim and the defendant, who was an eyewitness to the altercation between her sons and testified for both the State and the defense at trial.   Her testimony was largely corroborated by the testimony of the defendant, the only other eyewitness, and any factual disputes do not affect our analysis.

[4] The record indicates that Jacob was packing both for a week-long trip up north with friends and for boot camp down south, which he would be leaving for right after his trip up north.

[5] A fillet knife is a knife used to fillet a fish in the process of cleaning it.

[6] All three remaining family members confirmed this.

4

walked out. Karen then asked Jacob to give her the fillet knife, which he did, and she set it down——in its sheath——on a nearby nightstand. Langlois was heading back into the room at that point, but Jacob started pushing the door closed. Langlois, however, was able to push his way into the room and demanded to see what else Jacob had of his. Jacob then jumped on Langlois from behind and put him in a chokehold; after a few seconds Langlois capitulated and Jacob let go.

¶9 Langlois came up with the fillet knife in his right hand——now unsheathed——held up near his right shoulder, pointing out. Jacob and Langlois were yelling at one another and Jacob kicked Langlois. Langlois fell back and Jacob moved forward; Langlois caught himself and collided with Jacob, piercing the upper left side of Jacob's chest with the knife. Jacob stood up and stepped back, and Karen, seeing some blood on Langlois' leg, moved forward to check to see if Langlois was injured. Jacob, now grabbing the side of his chest, said "No, mom, it's me." Karen turned, saw the wound, and rushed out of the room to call 9-1-1. Jacob walked out to the kitchen, at first standing by the counter, then sitting in a chair; when he fell unconscious, Langlois helped Karen lay Jacob on the floor and began CPR.

¶10 Deputy Scott Nauman of the Washington County Sheriff's Department responded to the 9-1-1 call. He arrived to the house approximately two minutes after the call, announced his presence as he entered through the open garage, and moved toward the kitchen where he saw Langlois administering CPR to Jacob, who was lying in a large pool of blood. Nauman asked Langlois,

"[w]ho did this to him," to which Langlois responded "I did."[7] Nauman placed Langlois under arrest, directed Karen to take over administering CPR, and escorted Langlois out to his squad car.

¶11 On February 6, 2014, the State filed its criminal complaint charging Langlois with one count of first-degree reckless homicide, use of a dangerous weapon, contrary to Wis. Stat. § 940.02(1).   On July 16, 2014, the State filed an information alleging the same.   On August 27, 2014, Langlois pled not guilty and the case proceeded to trial.

## A.   Trial Testimony

¶12 On July 14, 2015, trial began.   Over the course of three days, the jury heard testimony from 18 witnesses.

### 1.   State witnesses

¶13 Deputy Nauman, as noted above, was the first responder to the scene.   Nauman testified that, as he was taking Langlois out of the house, the second responding officer, Washington County Sheriff's Deputy Jesse Williams, was coming in with his medical kit.   After securing Langlois in the back seat of the squad car, Nauman returned to the house and helped Williams render aid to Jacob.   Nauman testified that there was a lot of blood on the floor, but no more blood was coming out of the puncture site, and that Jacob was having trouble breathing at that point.

---

[7] The defense did not challenge the admission of any of Langlois' statements to the police.

¶14 Deputy Christopher Killey of the Washington County Sheriff's Department was the third officer to arrive to the scene and testified that he took up watching over Langlois, who was still seated in the back of Nauman's patrol car. Observing the blood on Langlois' clothing, Killey asked Langlois if he was injured and Langlois replied that he was not. Killey testified that he then asked Langlois for his name, to which Langlois responded: "what does it matter? I stabbed my brother. I stabbed my brother."

¶15 Detective James Wolf and Investigator David Klopfenstein, both of the Washington County Sheriff's Department, were also at the scene. Wolf was tasked with processing the scene while Klopfenstein interviewed Karen. Klopfenstein testified that Karen appeared calm,[8] that she agreed to accompany him to the Hartford Police Department to make a statement, and that she never used the term "accident" or "self-defense" in either her oral or written statements. Wolf testified that he did a walk-through of the house, observing "a large pool of blood" on the kitchen floor and blood drops on the floor in Jacob's bedroom. Also on the floor in Jacob's bedroom were the fillet knife and knife sheath, which he collected as

---

[8] On cross-examination, Klopfenstein agreed that there "was a lot of blood in that house," that Jacob "was hurt pretty significantly," and that was all "that was known to Karen."

7

evidence.[9]  Wolf testified that the knife had an approximately six-inch blade, and that the blade had blood on it.

¶16  Dr. Zelda Okia, the medical examiner who conducted the autopsy on Jacob, testified that, to a reasonable degree of medical certainty, the cause of death was a puncture wound, six inches deep, on the left side of his chest between his second and third ribs.  On cross-examination, Dr. Okia acknowledged that she could not tell from the autopsy whether the knife had been thrust into Jacob or whether Jacob had fallen onto it.

¶17 Detective Joel Clausing of the Washington County Sheriff's Department——the State's final witness——conducted the interview of Langlois.  The interview was videotaped[10] and proceeded in essentially three parts: a verbal interview, a written statement, and a reenactment.  Clausing testified that Langlois said he had grabbed the knife because he wanted to make Jacob feel "scared so he could back down"; and that Langlois said he was angry and that he had stabbed Jacob because "he kicked me and I just reacted.  I mean, there's no thinking about it.  It was just reaction."  Clausing also testified that during the reenactment, Langlois demonstrated a forward motion with his arm, and the State admitted photos showing a frame-by-frame capture of this part of Langlois' demonstration.

---

[9] The sheath and the knife were admitted into evidence as Exhibits 28 and 29, respectively.

[10] A transcript of the interview was admitted into evidence as Exhibit 42.

2. Defense witnesses[11]

¶18 The first witness for the defense was the family attorney who helped the Langloises in the initial aftermath to understand the criminal process Langlois was subject to. He testified that when he met with Karen a few weeks after the incident to go over the statements she and Langlois had made to the police, Karen told him that both statements were "really incomplete," and that the stabbing had been an accident. He testified that he then arranged a second meeting with the police, during which Karen told Detective Clausing and Investigator Klopfenstein that Jacob had had "wild eyes" and that Langlois had jack-knifed forward after being kicked, which is what caused the stabbing.[12]

¶19 Langlois testified next. In addition to testifying to the facts of the altercation given above, Langlois corroborated the testimony of Nauman and Killey, confirming that he said "I did" in response to Deputy Nauman's question "who did this," and that he told Deputy Killey "I stabbed him." Langlois also testified that he was aware of what a fillet knife is; that he knew the knife was sheathed because it was sharp; that he picked

---

[11] At the close of the State's case-in-chief, Langlois moved to dismiss the charges. The circuit court denied the motion, concluding that "the case is sufficient to go to the jury and that there's enough evidence . . . where the jury could decide, if it so chose, that the State has proven its case beyond a reasonable doubt."

[12] Detective Clausing and Investigator Klopfenstein both confirmed that they met with Karen a second time during their testimony.

the fillet knife up and unsheathed it; and that, when he collided with Jacob, the knife pierced Jacob's chest. He testified that afterwards he grabbed two first aid kits and ran after Jacob to the kitchen where he saw "something that [he] won't be able to forget ever, the blood just squirting out of [Jacob] at a really high speed and really fast all in like one or two seconds." Langlois testified that it was not his intent to physically hurt Jacob, but rather that he had picked up the knife "[t]o get him to stop and stop attacking me and my mom. . . . [Jacob] was really angry and I wanted him to stop being extremely angry towards me. And I was pretty much just afraid of being put in another choke hold as well." He said that what happened was an accident, but admitted on cross-examination that nowhere in his statement to the police did he use the word "accident" or "self-defense," and that he could have walked out of the room but did not because he was "furious."

¶20 The defense then called seven character witnesses, all of whom testified that Langlois was an involved and contributing member of the community. Five also testified that Langlois was an intelligent individual. The defense closed its case with the testimony of Karen and Steven Langlois——the parents of the victim and of the defendant.

¶21 Steven testified that Jacob had an "explosive" temper, and that Jacob had, in the past, punched through windows and kicked walls and doors. On one occasion, Jacob had even physically attacked Steven. Steven testified that he had no

10

such problems with Langlois, however; Langlois did his school work and was in advanced placement classes, had a job, was in scouts, was taking flying lessons, and generally did everything that was asked of him. He further testified that, in general, the brothers had a typical sibling relationship——"Will you stop touching me, that kind of stuff. . . never [] any violent acts." Karen, in addition to testifying to the facts of the altercation given above, verified that Jacob had acted out aggressively——and in one instance, with Steven, physically——in the home and at school.

### 3. Rebuttal witnesses

¶22 In rebuttal, the State called Sergeant Amy Swan, Jacob's recruiter from the National Guard. She testified that Jacob had always been respectful in her interactions with him, but admitted on cross-examination that she had not spoken with Jacob's parents or reviewed his school disciplinary record in evaluating his fitness for service.

### B. Jury Instructions

¶23 At the close of evidence, the State requested instruction on the charged offense——first-degree reckless homicide by use of a dangerous weapon——and on two lesser-included offenses——second-degree reckless homicide by use of a

11

dangerous weapon[13] and homicide by negligent handling of a dangerous weapon.[14] It also requested the instruction regarding retreat.[15] The defense requested instruction on both self-defense[16] and the defense of accident.[17] The circuit court granted these requests and instructed the jury, in relevant part, as follows:

> The information in this case . . . charged the Defendant with first degree reckless homicide use of a dangerous weapon and you must first consider whether the Defendant is guilty of that offense.
>
> If you are not satisfied that the Defendant is guilty of first degree reckless homicide, you must consider whether or not the Defendant is guilty of second degree reckless homicide use of a dangerous weapon, which is a less serious degree of criminal homicide.
>
> If you are not satisfied that the Defendant is guilty of first degree reckless homicide or guilty of second degree reckless homicide, then you must consider whether or not the Defendant is guilty of homicide by negligent handling of a dangerous weapon, which is a less serious offense than either first or second degree reckless homicide.

---

[13] See Wis JI——Criminal 1022 (2015). This instruction is a combined instruction for first- and second-degree reckless homicide by use of a dangerous weapon for cases where, as here, second-degree reckless homicide is charged as a lesser-included offense of first-degree reckless homicide.

[14] See Wis JI——Criminal 1175 (2011).

[15] See Wis JI——Criminal 810 (2001).

[16] See Wis JI——Criminal 801 (2014).

[17] See Wis JI——Criminal 772 (2005).

12

### 1. First-degree reckless homicide, use of a dangerous weapon

¶24  After defining first-degree reckless homicide per Wis. Stat. § 940.02(1), the circuit court discussed self-defense:

> Self defense is an issue in this case.  In deciding whether the Defendant's conduct was criminally reckless conduct which showed utter disregard for human life or was criminally negligent conduct, you should also consider whether the Defendant acted in lawful self defense.
>
> The law of self defense allows the Defendant to threaten or intentionally use force against another only if the Defendant believed that there was an actual or [imminent] unlawful interference with the Defendant's person and the Defendant believed that the amount of force the Defendant used or threatened to use was necessary to prevent or terminate the interference and the Defendant's beliefs were reasonable.
>
> The Defendant may intentionally use force, which is intended or likely to cause death or great bodily harm, only if the Defendant reasonably believes that the force used was necessary to prevent [imminent] death or great bodily harm to himself.  A belief may be reasonable, even though mistaken.
>
> In determining whether the Defendant's beliefs were reasonable, the standard is what a person of ordinary intelligence and prudence would have believed in the Defendant's position under the circumstances that existed at the time of the alleged offense.
>
> The reasonableness of the Defendant's beliefs must be determined from the standpoint of the Defendant at the time of the Defendant's acts and not from the viewpoint of the jury now.

The court then gave the instruction on retreat:

> Let's talk about this issue of retreat.  There is no duty to retreat, however, in determining whether the Defendant reasonably believed the amount of force used was necessary to prevent or terminate the interference, you may consider whether the Defendant

13

had an opportunity to retreat with safety and whether such retreat was feasible and whether the Defendant knew of the opportunity to retreat.

After reciting the second element of first-degree reckless homicide——which includes a definition of "criminally reckless conduct" as "conduct [that] created a risk of death or great bodily harm to another person and the risk of death or great bodily harm was unreasonable and substantial"——but before reciting the third, the court further stated:

> You should consider the evidence relating to self defense in deciding whether the Defendant's conduct created . . . an unreasonable risk to another. If the Defendant was acting lawfully in self defense, his conduct did not create an unreasonable risk to another.
>
> The burden is on the State to prove beyond a reasonable doubt that the Defendant did not act lawfully in self defense. And you must be satisfied beyond a reasonable doubt from all the evidence in the case that the risk was unreasonable.
>
> We'll talk about the concept of accident. The Defendant contends that he did not act with criminally reckless conduct but rather, that what happened was an accident. If the Defendant did not act with criminally reckless conduct required for a crime, the Defendant is not guilty of that crime.

The court then discussed the third and final element of the first-degree offense and concluded by instructing the jury to

> make every reasonable effort to agree unanimously on the charge of first degree reckless homicide before considering second degree reckless homicide. However, if after full and complete consideration of the evidence you conclude that further deliberation would not result in unanimous agreement on the charge of first degree reckless homicide, you should consider whether the Defendant is guilty of second degree reckless homicide.

14

### 2.   Second-degree reckless homicide, use of a dangerous weapon

¶25 After defining second-degree reckless homicide per Wis. Stat. § 940.06, the court explained the difference between first-degree and second-degree reckless homicide——that "the first degree offense requires proof of one additional element; namely, that the circumstances of the Defendant's conduct showed utter disregard for human life"——and told the jury:

> If you are satisfied beyond a reasonable doubt that all the elements of first degree reckless homicide were present except [the additional element], you should find the Defendant guilty of second degree reckless homicide.

The circuit court did not repeat the instructions for self-defense or accident.  It then concluded:

> However, if after a full and complete consideration of the evidence you conclude that further deliberation would not result in unanimous agreement on the charge of second degree reckless homicide, then you should consider whether the Defendant is guilty of homicide by negligent handling of a dangerous weapon.

### 3.   Homicide by negligent handling of a dangerous weapon

¶26 After defining homicide by negligent handling of a dangerous weapon per Wis. Stat. § 940.08(1), the circuit court again discussed self-defense:

> Self defense is an issue in this case that also applies to the charge of homicide by negligent handling of a dangerous weapon.  In deciding whether the Defendant's conduct was criminally negligent conduct, you should also consider whether the Defendant acted lawfully in self defense.

15

As I previously indicated, the law of self defense allows the Defendant to threaten or intentionally use force against another only if the Defendant believed that there was an actual or [imminent] unlawful interference with the Defendant's person and the Defendant believed that the amount of force the Defendant used or threatened to use was necessary to prevent or terminate the interference and the Defendant's beliefs were reasonable.

The Defendant may intentionally use force which is intended or likely to cause death or great bodily harm only if the Defendant reasonably believed that the force [] used was necessary to prevent [imminent] death or great bodily harm to himself.

And as I previously indicated, a belief may be reasonable even though mistaken.  In determining whether the Defendant's beliefs were reasonable, the standard is what a person of ordinary intelligence and prudence would have believed in the Defendant's position under the circumstances that existed at the time of the alleged offense.

The reasonableness of the Defendant's beliefs must be determined from the standpoint of the Defendant at the time of the Defendant's acts and not from the viewpoint of the jury now.

The court then reiterated its prior instruction on retreat:

And as I previously indicated, there's no duty to retreat.  However, in determining . . . whether the Defendant reasonably believed that the amount of force used was necessary to prevent or terminate the interference, you may consider whether the Defendant had the opportunity to retreat with safety, whether such retreat was feasible and whether the Defendant knew of the opportunity to retreat.

And, after reciting the definition of "criminal negligence"——that "Defendant's operation or handling of a dangerous weapon created a risk of death or great bodily harm and the risk of death or great bodily harm was unreasonable and substantial [of

16

which] the Defendant should have been aware"——the court again discussed the defense of accident:

> Once again, the Defendant contends that he was not aware of the risk of death or great bodily harm required for a crime but rather that what happened was an accident.

> If the Defendant was not aware of the risk of death or great bodily harm required for a crime, the Defendant is not guilty of that crime. Before you may find the Defendant guilty of homicide by negligent operation of a dangerous weapon . . . the State must prove by evidence that satisfies you beyond a reasonable doubt that the Defendant should have been aware of the risk of death or great bodily harm.

### 4. General instructions

¶27 In addition to these charge-specific instructions, the circuit court generally instructed the jury, in relevant part, as follows:

> Defendants are not required to prove their innocence. The law presumes every person charged with the commission of an offense to be innocent. This presumption requires a finding of not guilty unless in your deliberations you find it is overcome by evidence which satisfies you beyond a reasonable doubt that the Defendant is guilty.

> The burden of establishing every fact necessary to constitute guilt is upon the State. Before you can return a verdict of guilty, the evidence must satisfy you beyond a reasonable doubt that the Defendant is guilty.

¶28 Defense counsel did not object to either the charge-specific instructions or the general instructions.

### C. Postconviction Motions

¶29 On July 17, 2015, the jury returned its verdict: "We, the jury, find the defendant, Joseph Langlois, guilty of

Homicide by Negligent Handling of a Dangerous Weapon." Langlois moved for a judgment notwithstanding the verdict, which the circuit court denied. On September 28, 2015, the circuit court entered judgment of conviction[18] and sentenced Langlois to five years probation.

¶30 Langlois filed his first postconviction motion on September 9, 2015, pursuant to Wis. Stat. § 974.02, moving for reconsideration of the denial of his motion for judgment notwithstanding the verdict. He argued that there was insufficient evidence to support the verdict because the State failed to prove beyond a reasonable doubt that "a normally prudent person under the same circumstances" "should have been aware that his operation or handling of a dangerous weapon created the <u>unreasonable and substantial</u> risk of death or great bodily harm."[19] Relatedly, Langlois challenged the jury instructions, focusing on the accident instruction:

---

[18] The original judgment of conviction was entered on September 28, 2015. On November 24, 2015, an amended judgment of conviction was entered. This amended judgment reflected changes only to the conditions of probation to accommodate Langlois' employment.

[19] In support of this motion, Langlois attached a screen shot of a text message received after the verdict by one of the jurors: "Hi Karen! I was one of the jurors on your son's case. He only received the guilty verdict because of a technicality in the law. It was the phrase 'should have known' 'could cause severe bodily harm or death'. That charge was one the da added." We agree with the circuit court that this "juror text message does not indicate any jury concern regarding sufficiency of the evidence." Rather,

(continued)

18

The instructions on accident should have directed the jury to consider whether the State proved by evidence beyond a reasonable doubt that the defendant should have been aware of the "unreasonable and substantial" risk of death or great bodily harm; not merely the "risk" of death or great bodily harm. This omitted language created a lower standard for the State to meet in order for the jury to find the defendant guilty of Homicide by Negligent Handling of a Dangerous Weapon.

On October 7, 2015, the State responded that the only element in dispute was whether Langlois acted with criminal negligence, and there was sufficient evidence to support the verdict because both his written statement and videotaped confession "show that a jury could have drawn the appropriate inferences." The State also pointed out that Langlois' argument regarding the jury instructions was waived by defense counsel's failure to object,[20] but argued that, in any event, "the jury instructions as a whole did not mislead the jury." The circuit court denied Langlois' motion by decision and order dated October 29, 2015, concluding that "[t]he undisputed evidence . . . was more than sufficient

---

[the juror's] statement that a "technicality in the law" required the jury to find [] Langlois guilty because he "should have known" that his handling of the knife created an unreasonable and substantial risk of death or great bodily harm clearly indicates that despite sympathy for [Karen], the jury understood and performed its sworn obligations correctly.

[20] Langlois argued that, to the contrary, defense counsel had objected to instruction on lesser-included offenses in general——which is confirmed by the record——and that even where an argument is not preserved by objection, a court may "grant a new trial in the interest of justice when it is of the opinion that justice has been miscarried or a verdict is returned based upon erroneous instructions of law."

19

to allow the jury to conclude beyond a reasonable doubt that Langlois was criminally negligent," and that "there is not even a hint of any possible error in the instructions."

¶31 Langlois filed his second postconviction motion on May 2, 2016, pursuant to Wis. Stat. § 809.30(2)(h), renewing his arguments regarding the sufficiency of the evidence and the jury instruction on accident, but now also challenging the jury instruction on self-defense and raising a claim of ineffective assistance of counsel. He argued that the circuit court's failure to reiterate the State's burden to disprove self-defense when it instructed on homicide by negligent handling of a dangerous weapon had the effect of shifting the burden to him. The State's response, filed June 1, 2016, repeated its arguments in response to Langlois' first postconviction motion: the jury instructions as a whole were complete and did not mislead the jury; therefore, failure to object was not ineffective assistance of counsel, there was no due process violation, and the real controversy was tried. Similarly, the State again pointed to Langlois' written statement and verbal interview as providing sufficient evidence to support the only disputed element——criminally negligent operation of a dangerous weapon. The circuit court denied this second motion by decision and order dated June 28, 2016, for the same reasons it denied

20

Langlois' first motion: it concluded that the jury instructions were not erroneous[21] and that the evidence was sufficient.

¶32 On July 14, 2016, Langlois noticed appeal. The court of appeals affirmed. Langlois, 377 Wis. 2d 302, ¶¶1, 51. It concluded that the circuit "court's instructions to the jury, when viewed in their entirety and not in isolation, were not erroneous." Id., ¶36. With regard to the self-defense instruction, the court of appeals held that the jury had no reason to infer that Langlois bore any burden because the circuit court gave an accurate self-defense instruction, told the jury that self-defense applied to all of the counts, and specifically referenced the self-defense instruction when instructing the jury on negligent homicide by handling of a dangerous weapon. Id., ¶¶30, 32. With regard to the accident instruction, the court of appeals held that the instructions were clear as to the requisite mental state because they referred the jury back to the immediately preceding definition of criminal negligence. Id., ¶35. The court of appeals therefore concluded that trial counsel was not ineffective because failure to object to correct jury instructions is not deficient performance, and that Langlois was not entitled to a new trial in the interest of justice because there is no denial of due process where correct jury instructions are given. Id.,

---

[21] The circuit court did additionally find that, in retrospect, "there was no basis in the first instance for the court to have given a self-defense jury instruction."

¶¶36-37. The court of appeals further concluded that the evidence was sufficient to support the verdict because a rational jury could have found that the knife was a dangerous weapon; that the way Langlois handled the weapon constituted criminal negligence; and that Langlois had not acted in self-defense because he had had the opportunity to leave the room without using force.[22] Id., ¶¶48-49, 51.

¶33 On August 11, 2017, Langlois petitioned for review. On December 13, 2017, we granted Langlois' petition for review.

## II. STANDARD OF REVIEW

¶34 We consider first whether the jury instructions were erroneous. "A circuit court . . . has broad discretion in instructing a jury. A circuit court appropriately exercises its discretion in administering a jury instruction so long as the instructions as a whole correctly stat[e] the law and compor[t] with the facts of the case." Weborg v. Jenny, 2012 WI 67, ¶42, 341 Wis. 2d 668, 816 N.W.2d 191 (citation omitted). Whether a

---

[22] Presiding Judge Reilly dissented. In his view, counsel was deficient for failing to object to the jury instructions for homicide by negligent handling of a dangerous weapon because they were incomplete, and this error was "clearly prejudic[ial]." State v. Langlois, 2017 WI App 44, ¶61, 377 Wis. 2d 302, 901 N.W.2d 768 (Reilly, P.J., dissenting). He would have held that, although the self-defense and accident instructions for first- and second-degree reckless homicide were complete and correct, the instructions for negligent homicide were incomplete, and the jury cannot rely on the instructions given for crimes that are not under consideration when reaching a verdict. Id., ¶¶52, 57, 60.

22

jury instruction correctly states the law is a question of law that we review de novo.  Id.

¶35  We consider second whether there is sufficient evidence to sustain the conviction.  This too is a question of law that we review de novo, and we will "not overturn a jury's verdict unless the evidence, viewed most favorably to sustaining the conviction, 'is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.'"  State v. Beamon, 2013 WI 47, ¶21, 347 Wis. 2d 559, 830 N.W.2d 681 (quoting State v. Poellinger, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990)).

## III.  ANALYSIS

¶36  On review, we consider two issues.  First, we consider whether the jury instructions were erroneous.  We conclude that they were not, because, taken as a whole, they accurately state the law.  Consequently, we conclude that there is no basis for Langlois' claim of ineffective assistance of counsel, there is no due process violation, and reversal in the interest of justice is not appropriate.  Second, we consider whether there was sufficient evidence to support the jury's verdict.  We conclude that there was, because the evidence, viewed most favorably to sustaining the conviction, supports a finding of guilt beyond a reasonable doubt.

A.    Whether The Jury Instructions Were Erroneous

¶37  We consider first whether the jury instructions were erroneous.  Langlois argues that the accident and self-defense instructions given for homicide by negligent handling of a dangerous weapon were erroneous.  He argues that the instruction for accident was erroneous because it misstated the State's burden to prove his mental state when it omitted "unreasonable and substantial" before "risk."  Similarly, Langlois argues that the instruction for self-defense was erroneous because it omitted the State's burden to disprove self-defense, thereby shifting the burden to him.  The State argues that the jury instructions were not erroneous.  It argues that the instruction for accident was not erroneous because, when viewed as a whole, the jury instructions established that the State had to prove Langlois was aware of a risk that was unreasonable and substantial.  Moreover, because accident is a negative defense, the State disproves accident if it proves all of the elements of the crime——which Langlois does not dispute were properly recited——beyond a reasonable doubt.  Similarly, the instruction for self-defense was not erroneous because, when viewed as a whole, the jury instructions informed the jury that the State had the burden of disproving self-defense.  Moreover, a review of the record reveals that Langlois was not entitled to instruction on self-defense.  We conclude that the jury instructions were not erroneous because, taken as a whole, they accurately state the law.

24

## 1. Error

¶38 In determining whether a jury instruction correctly states the law, "[w]e review the jury instructions as a whole to determine whether the overall meaning communicated by the instructions was a correct statement of the law." Dakter v. Cavallino, 2015 WI 67, ¶32, 363 Wis. 2d 738, 866 N.W.2d 656; see also State v. Hubbard, 2008 WI 92, ¶27, 313 Wis. 2d 1, 752 N.W.2d 839 ("Jury instructions are not to be judged in artificial isolation, but must be viewed in the context of the overall charge.").

### a. Accident

¶39 The jury instruction for accident was not erroneous. The circuit court gave the accident instruction for homicide by negligent handling of a dangerous weapon immediately after defining "criminal negligence":

> Criminal negligence means the Defendant's operation of handling of a dangerous weapon created a risk of death or great bodily harm and the risk of death or great bodily harm was unreasonable and substantial and the Defendant should have been aware that this operation or handling of a dangerous weapon created an unreasonable and substantial risk of death or great bodily harm.

> Once again, the Defendant contends that he was not aware of the risk of death or great bodily harm required for a crime but rather that what happened was an accident.

¶40 Langlois argues that it was error for the circuit court to omit "unreasonable and substantial" before "risk" in the second paragraph——the accident instruction——because it had the effect of lowering the State's burden to prove Langlois'

25

mental state from "awareness of an unreasonable and substantial risk" to simply "awareness of a risk."  This argument fails. "'The' is a definite article used as a function word to indicate that a following noun or noun equivalent refers to someone or something that is unique."  State v. Arberry, 2018 WI 7, ¶19, 379 Wis. 2d 254, 905 N.W.2d 832.  Thus, the use of "the" before "risk" means that the instruction "contemplates only one unique, specified [risk]."  Id.

¶41 Common sense compels the conclusion that the "one unique, specified risk" is the "unreasonable and substantial risk" discussed in the immediately preceding sentence.  Accord Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 144 (2012) (noting that "legalistic pronoun[s]" such as "the risk" should be understood as referring to the nearest clarifying antecedent).  This understanding is confirmed by the explanatory phrase that immediately follows this legalistic pronoun: "the risk of death or great bodily harm required for a crime." (Emphasis added.)

¶42 In sum, although the type of risk at issue might be less clear if the challenged accident instruction is read in isolation, the context provided by the immediately preceding sentence and the explanatory phrase that immediately follows clearly convey that "the risk" referenced in the accident instruction is "an unreasonable and substantial risk."  Thus, the jury instruction given for accident on the charge of homicide by negligent handling of a dangerous weapon is not

26

erroneous because, viewed in context, it communicates a correct statement of law.[23]

### b. Self-defense

¶43 The jury instruction for self-defense was not erroneous. Although the initial self-defense instruction was given after the statutory definition for first-degree reckless homicide, the first paragraph made it clear that the instruction applied generally to the case and specifically to criminally negligent conduct:

> Self defense is an issue <u>in this case</u>. In deciding whether the Defendant's conduct was criminally reckless conduct which showed utter disregard for human life <u>or was criminally negligent conduct</u>, you should also consider whether the Defendant acted in lawful self defense.

(Emphases added.) Therefore, the jury was aware that the initial instruction it was receiving applied to the case generally and to criminally negligent conduct specifically. Langlois does not dispute that this initial instruction was an accurate statement of the law; thus, the jury was properly instructed on self-defense.

---

[23] We recognize that the circuit court was reasonably concerned about the length of the jury instructions in this case. Although we conclude that the abbreviated jury instructions given in this case were not erroneous, it is best practice to read the pattern instructions for each charge, except, of course, where the pattern instructions themselves are abbreviated. See <u>supra</u> note 13. In fact, had the circuit court taken the time at trial and not abbreviated the instructions as it did, this issue would not have existed to appeal.

¶44 Additionally, however, the circuit court reiterated the self-defense instruction after it gave the statutory definition of homicide by negligent handling of a weapon. Although it did not re-recite the State's burden of proof, it twice incorporated by reference its initial instruction on self-defense when it said, "As I previously indicated." Thus, the jury was reminded that the initial instruction, recited in the context of reckless homicide, applied equally to the context of negligent homicide.

¶45 Moreover, the circuit court gave the jury a general instruction on the State's burden to establish guilt beyond a reasonable doubt: "The burden of establishing every fact necessary to constitute guilt is upon the State. Before you can return a verdict of guilty, the evidence must satisfy you beyond a reasonable doubt that the Defendant is guilty." Because self-defense is a negative defense, the State disproves self-defense beyond a reasonable doubt if it proves the elements of the crime beyond a reasonable doubt, specifically criminal negligence. Therefore, the jury was aware that the State had to prove criminal negligence——the element that self-defense would negate——beyond a reasonable doubt.

¶46 Langlois argues, however, that the error is evident because the jury found him not guilty on the two counts where the self-defense instruction included the State's burden——first- and second-degree reckless homicide——but guilty on the count where the State's burden was not reiterated——negligent homicide; he concludes, therefore, that the lack of reiteration of the

28

State's burden is the reason that the jury found him guilty. This argument fails. As an initial matter, the circuit court did not repeat the accident or self-defense instructions for second-degree reckless homicide, but the jury still found Langlois not guilty of that offense. Additionally, inferring error from a verdict of guilt assumes that the evidence was otherwise insufficient to sustain the State's burden; but, as explained below, see infra ¶¶58-62, we conclude that the evidence was sufficient to find him guilty of negligent homicide by handling of a dangerous weapon beyond a reasonable doubt.

¶47 In sum, although the State's burden might be less clear if the challenged self-defense instruction is read in isolation, the context provided by the prior instruction and the general instructions clearly convey that the State bore the burden to disprove self-defense. Thus, the jury instruction given for self-defense on the charge of homicide by negligent handling of a dangerous weapon is not erroneous because, viewed in context, it communicates a correct statement of law.[24]

---

[24] In so concluding, we agree with the court of appeals that Langlois' reliance on State v. Austin, 2013 WI App 96, 349 Wis. 2d 744, 836 N.W.2d 833, is misplaced because, in Austin, the circuit court made no mention at all of the State's burden to disprove self-defense. See Langlois, 377 Wis. 2d 302, ¶¶31-32.

29

## 2. Prejudice[25]

¶48 An erroneous jury instruction warrants reversal only when the error is prejudicial. Dakter, 363 Wis. 2d 738, ¶33. Langlois argues that the omissions in the jury instructions on accident and self-defense are reversible error on any one of three grounds: ineffective assistance of counsel, due process, or interest of justice. The State argues that, because the jury instructions were not erroneous, trial counsel did not render ineffective assistance by failing to object; there was no violation of Langlois' due process rights; and Langlois is not entitled to a new trial in the interest of justice. Because we conclude that the jury instructions were not erroneous, we also conclude that there is no basis for Langlois' claim of ineffective assistance of counsel, there is no due process violation, and reversal in the interest of justice is not appropriate.

### a. Ineffective assistance of counsel

¶49 Whether trial counsel's failure to object to an error in the jury instructions constitutes ineffective assistance of counsel is a mixed question of law and fact. See State v. Breitzman, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93.

> The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous;

---

[25] Although we recognize that we need not address prejudice because we conclude that the jury instructions are not erroneous, we choose to fully address the prejudice argument raised for the sake of completeness.

whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo. To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial. If the defendant fails to satisfy either prong, we need not consider the other.

Id. (citations omitted). Whether trial counsel performed deficiently and whether any deficient performance was prejudicial are questions of law we review de novo. Id., ¶¶38-39.

¶50 "[A] claim predicated on a failure to challenge a correct [jury instruction] cannot establish either" deficient performance or prejudice. State v. Ziebart, 2003 WI App 258, ¶14, 268 Wis. 2d 468, 673 N.W.2d 369; see also State v. Neumann, 2013 WI 58, ¶141, 348 Wis. 2d 455, 832 N.W.2d 560. Thus, because we conclude above that the jury instructions correctly stated the law, see supra ¶¶42, 47, we also conclude that there is no basis for Langlois' claim of ineffective assistance of counsel.

b. Due process violation

¶51 Whether an error in the jury instructions constitutes a violation of a party's due process rights is a question of law that we review de novo. See, e.g., State v. Badzinski, 2014 WI 6, ¶27, 352 Wis. 2d 329, 843 N.W.2d 29. "There are two types of jury instruction challenges: those challenging the legal accuracy of the instructions, and those alleging that a legally accurate instruction unconstitutionally misled the jury." State v. Burris, 2011 WI 32, ¶44, 333 Wis. 2d 87, 797

31

N.W.2d 430. Langlois appears to raise a challenge that incorporates both types because he claims that the omission of certain language (i.e., a legally inaccurate instruction) has misled the jury.

¶52 A jury instruction that incorrectly states the law violates due process if it has "the effect of relieving the State of its burden of proving beyond a reasonable doubt every element of the offense charged." State v. Harvey, 2002 WI 93, ¶23, 254 Wis. 2d 442, 647 N.W.2d 189. A jury instruction misleads the jury in a way that violates due process if "there is a reasonable likelihood that the instruction was applied in a manner that denied the defendant 'a meaningful opportunity for consideration by the jury of his defense.'" Burris, 333 Wis. 2d 87, ¶50 (quoting State v. Lohmeier, 205 Wis. 2d 183, 191, 556 N.W.2d 90 (1996)).

¶53 Because we conclude above that the jury instructions correctly state the law, see supra ¶¶42, 47, we also conclude that there is no due process violation on the basis that legally inaccurate instructions effectively relieved the State of its burden of proof. Similarly, because we conclude below that there is sufficient evidence to sustain the conviction, see infra ¶¶58-62, we also conclude that there is no due process violation because there is no reasonable likelihood that the legally accurate instructions were applied in a manner that denied the defendant a meaningful opportunity for consideration by the jury of his defense. See State v. Ferguson, 2009 WI 50, ¶¶9, 45, 317 Wis. 2d 586, 767 N.W.2d 187 (citing Harvey, 254

32

Wis. 2d 442, ¶46) (noting that an instructional error is harmless if "it is clear beyond a reasonable doubt that a rational jury would have [nonetheless] found the defendant guilty").

### c. Interest of justice

¶54 Whether an error in the jury instructions entitles a defendant to a new trial in the interest of justice requires us to consider Wis. Stat. §§ 752.35 and 751.06.  Under Wis. Stat. § 752.35, the court of appeals has discretion to reverse a conviction and order a new trial where "it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." § 752.35.  "We review a discretionary determination for an erroneous exercise of discretion.  The court [of appeals] erroneously exercises its discretion when it applies the wrong legal standard or makes a decision not reasonably supported by the facts of record."  State v. Avery, 2013 WI 13, ¶23, 345 Wis. 2d 407, 826 N.W.2d 60 (citation omitted).  Because we conclude above that the jury instructions correctly state the law, see supra ¶¶42, 47, and we conclude below that there is sufficient evidence to sustain the verdict, see infra ¶¶58-62, we also conclude that the court of appeals did not erroneously exercise its discretion in declining to reverse Langlois' conviction and order a new trial in the interest of justice.

¶55 Under Wis. Stat. § 751.06, we have independent discretionary authority to reverse a conviction and order a new

33

trial where "it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." The interpretation and application of a statute present questions of law that we review de novo. Estate of Miller v. Storey, 2017 WI 99, ¶25, 378 Wis. 2d 358, 903 N.W.2d 759. In applying § 751.06, we exercise our discretion infrequently, judiciously, and only in exceptional cases. Avery, 345 Wis. 2d 407, ¶38. Because we conclude above that the jury instructions correctly state the law, see supra ¶¶42, 47, and we conclude below that there is sufficient evidence to sustain the verdict, see infra ¶¶58-62, we also conclude that this is not an exceptional case warranting an exercise of our discretion to reverse Langlois' conviction and order a new trial in the interest of justice.

B. Whether There Was Sufficient Evidence

¶56 We consider second whether there was sufficient evidence to support the jury's verdict. Langlois argues that there is insufficient evidence to sustain the conviction because the record establishes that he was acting in self-defense; thus, although his conduct created a risk, it was not an unreasonable one, and a properly instructed jury could not have found beyond a reasonable doubt that Langlois operated or handled a dangerous weapon in a manner constituting criminal negligence. The State argues that there is sufficient evidence to sustain the conviction because the record establishes that a rational jury could have found that the State proved each element of homicide

by negligent handling of a dangerous weapon beyond a reasonable doubt. We conclude that there was sufficient evidence to sustain the conviction because the evidence, viewed most favorably to sustaining the conviction, supports a finding of guilt beyond a reasonable doubt.

¶57 The jury found Langlois guilty of homicide by negligent handling of a dangerous weapon, contrary to Wis. Stat. § 940.08(1). Section 940.08(1) provides, in relevant part, that "whoever causes the death of another human being by the negligent operation or handling of a dangerous weapon . . . is guilty of a Class G felony." In order to establish that Langlois was guilty of the crime of homicide by negligent handling of a dangerous weapon, the State had to prove three elements beyond a reasonable doubt:

1. The defendant operated or handled a dangerous weapon.

2. The defendant operated or handled a dangerous weapon in a manner constituting criminal negligence.

3. The defendant's operation or handling of a dangerous weapon in a manner constituting criminal negligence caused the death of [Jacob].

Wis JI——Criminal 1175, at 1 (2011).

¶58 As applicable here, "dangerous weapon" means "any device or instrumentality which, in the manner it is used or intended to be used, is likely to produce death or great bodily harm." Wis JI——Criminal 1175, at 1-2 (2011). At trial, Detective Wolf testified that the fillet knife had a six-inch

35

long blade and Langlois testified that he knew the knife was sharp and that he held it with the point outward toward Jacob. This evidence is sufficient to establish beyond a reasonable doubt that the fillet knife was a "dangerous weapon."

¶59 "Criminal negligence" means that (a) the defendant's operation or handling of a dangerous weapon created a risk of death or great bodily harm; (b) the risk of death or great bodily harm was unreasonable and substantial; and (c) the defendant should have been aware that his operation of a dangerous weapon created the unreasonable and substantial risk of death or great bodily harm.  Wis JI——Criminal 1175, at 2 (2011).  At trial, Langlois testified that he picked up the fillet knife, removed it from its sheath, and held it at his shoulder with the blade pointing outward.  Langlois also testified that he had the opportunity to retreat but did not because he was "furious."  Detective Clausing additionally testified that Langlois never used the word "accident" or "self-defense" in his statements and that he demonstrated a forward stabbing motion during his reenactment of what happened.  This evidence is sufficient to establish beyond a reasonable doubt that Langlois' handling of the fillet knife created a risk of death or great bodily harm that was unreasonable and substantial.

¶60 Furthermore, at trial, five of the seven character witnesses for the defense testified to Langlois' intelligence, describing him as a "smart, very smart, smart kid," "very intelligent," a "smart young man," "very smart," and "extremely

36

smart." This evidence is sufficient to establish beyond a reasonable doubt that Langlois should have known that holding a six-inch fillet knife so that it was pointed outward toward another created an unreasonable and substantial risk of death or great bodily harm.

¶61 "Cause" means that "the defendant's act was a substantial factor in producing the death." Wis JI——Criminal 1175, at 1 (2011). At trial, Deputy Nauman, Investigator Klopfenstein, Detective Wolf, and Langlois all testified that there was a large amount of blood on the kitchen floor. Langlois further testified that he saw "the blood just squirting out of [Jacob] at a really high speed and really fast all in like one or two seconds." In addition, Dr. Okia testified that, to a reasonable degree of medical certainty, the cause of death was a puncture wound, six inches deep, on the left side of Jacob's chest between his second and third ribs. This evidence is sufficient to prove beyond a reasonable doubt that Langlois' act was a substantial factor in producing Jacob's death.

¶62 In sum, the evidence, viewed most favorably to sustaining the conviction, supports a finding of guilt beyond a reasonable doubt.

## IV. CONCLUSION

¶63 On review, we consider two issues. First, we consider whether the jury instructions were erroneous. We conclude that they were not, because, taken as a whole, they accurately state the law and did not mislead the jury. As a result, we also

37

conclude that Langlois' counsel was not ineffective for failing to object to the jury instructions because it is not deficient performance to fail to object to jury instructions which are correct.   We further conclude that there is no violation of Langlois' due process rights and that Langlois is not entitled to a new trial in the interest of justice because the jury instructions were not erroneous.   Second, we consider whether there was sufficient evidence to support the jury's verdict.   We conclude that there was, because a reasonable jury could have found guilt beyond a reasonable doubt.

*By the Court.*—The decision of the court of appeals is affirmed.

¶64 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* I agree with Presiding Judge Paul Reilly, who correctly emphasized the illogic of "believ[ing] that a jury may utilize instructions for crimes not under consideration to fix erroneous instructions for the crime under consideration."[1]

¶65 The majority incorrectly "fixes" the circuit court's self-defense instructions by irrationally assuming that the phrase "As I previously indicated" means "apply the self-defense instruction I gave for crimes of which you have found the defendant not guilty despite any differences the previous instruction might have when compared with the self-defense instruction I am giving now."

¶66 In my view, the court of appeals decision in State v. Austin, 2013 WI App 96, 349 Wis. 2d 744, 836 N.W.2d 833, is on all fours with the facts of the instant case. Austin rejected the very same illogic that the majority relies upon to fix the circuit court's erroneous instructions in the instant case.

¶67 Moreover, following Austin, I conclude that the defendant is entitled to a new trial in the interest of justice regardless of whether he was prejudiced as a result of trial counsel's failure to object to the circuit court's erroneous jury instructions. A Machner hearing is not necessary.

¶68 Accordingly, I dissent.

I

---

[1] State v. Langlois, 2017 WI App 44, ¶52, 377 Wis. 2d 302, 901 N.W.2d 768 (Reilly, P.J., dissenting).

¶69 The majority correctly states that jury instructions must be viewed as a whole,[2] but the majority misapprehends what the "whole" is.

¶70 The circuit court instructed the jury to consider each of three charges seriatim. That is, the circuit court required the jury to first follow the instructions applicable to the charge of first-degree reckless homicide and determine whether the defendant was guilty of that charge. If the jury found the defendant not guilty of first-degree reckless homicide, the circuit court instructed the jury to follow the instructions applicable to the charge of second-degree reckless homicide and determine whether the defendant was guilty of that charge. Third, and finally, if the jury found defendant not guilty of second-degree reckless homicide, the circuit court instructed the jury to follow the instructions applicable to the charge of homicide by negligent handling of a dangerous weapon.

¶71 Thus, in the context of the instant case, viewing the jury instructions as a whole means viewing all of the instructions applicable to a particular charge together to determine if the instructions for that charge correctly state the law.[3]

¶72 The circuit court "could have given one complete, proper instruction on self-defense and told the jury that it

---

[2] Majority op., ¶34.

[3] Part of the "whole" would also include any generally applicable instructions that the circuit court told the jury apply to all three charges.

2

applied to all three crimes, but it did not do so. Instead, the court gave an instruction on self-defense for first- and second-degree reckless homicide and gave a distinctly different instruction for self-defense applicable to homicide by negligent handling of a dangerous weapon."[4]

¶73 The court of appeals decision in State v. Austin directly supports the defendant's position that the self-defense instruction applicable to the charge of homicide by negligent handling of a dangerous weapon was erroneous.

¶74 In Austin, the court of appeals dealt with a claim of erroneous jury instructions that was very similar to the defendant's claim in the instant case. Austin was charged with first-degree recklessly endangering safety with a dangerous weapon. At trial, but before the case was submitted to the jury, the State asked the circuit court to instruct the jury on the lesser-included charge of second-degree recklessly endangering safety with a dangerous weapon. The circuit court granted that request and instructed the jury on charges of first- and second-degree recklessly endangering safety with a dangerous weapon.[5]

¶75 Austin had presented sufficient evidence on the defenses of self-defense and defense-of-others. When instructing the jury on the first-degree charge, the circuit

---

[4] Langlois, 377 Wis. 2d 302, ¶56 (Reilly, P.J., dissenting).

[5] State v. Austin, 2013 WI App 96, ¶2-3, 349 Wis. 2d 744, 836 N.W.2d 833.

court provided instructions on the substantive law of self-defense, the substantive law of defense-of-others, and the substantive law of the first-degree charge. Although the circuit court instructed the jury that "[t]he state must provide [sic] by evidence which satisfies you beyond a reasonable doubt that the defendant did not act lawfully in defense of others[,]" the circuit court never instructed the jury on the burden of proof applicable to self-defense.[6]

¶76 When instructing the jury on the second-degree charge, the circuit court noted that self-defense was an issue but did not repeat the self-defense instruction. The defense-of-others instruction was also not repeated when the circuit court instructed the jury on the second-degree charge.[7] Instead, the only mention of defense-of-others was that the jury "should consider the evidence relating to self-defense, as well as defense of others, in deciding whether the defendant's conduct created an unreasonable risk to another. If the defendant was acting lawfully in self-defense or in defense of others, his conduct did not create an unreasonable risk to another."[8]

¶77 Importantly, the circuit court did not mention the State's burden of proof as to either defense when it instructed the jury on the second-degree charge.

---

[6] Id., ¶¶7-8.

[7] Id., ¶¶9-10.

[8] Id., ¶10.

4

¶78 Austin was acquitted of the first-degree charge, but convicted of the second-degree charge.

¶79 Austin argued that he was entitled to a new trial based upon errors in the circuit court's jury instructions:

> Austin claims the instructions were erroneous because the self-defense instructions failed to tell the jury that the State had to disprove self-defense beyond a reasonable doubt. Further, he contends that this error was compounded by the juxtaposition of the first defense-of-others instruction, which did instruct the jury that the State had to disprove the defense. That is, Austin suggests that the omission of the burden of proof for self-defense, contrasted with the inclusion of the burden of proof for defense-of-others, may have suggested to the jury that the State did not have the burden of proof on the self-defense claim. Austin also claims that it was error for the circuit court to omit the instruction on defense of others from the second-degree instructions.

Austin, 349 Wis. 2d 744, ¶11.

¶80 As to the second-degree charge of which Austin was convicted, the court of appeals held that the jury instructions for both self-defense and defense-of-others were erroneous.

¶81 Regarding the self-defense instruction, the court of appeals concluded that the instruction of the substantive law of self-defense, standing alone, without an instruction on the burden of proof, "implies that the defendant must satisfy the jury that he was acting in self-defense. In doing so, the instruction removes the burden of proof from the State to show that the defendant was engaged in criminally reckless conduct."[9]

---

[9] Id., ¶17.

5

¶82 Regarding the defense-of-others instruction, the court of appeals concluded as follows:

> With regard to the lack of defense-of-other instructions in the second-degree instructions, the State claims that the circuit court's instruction, though not identical to the defense-of-others instruction given for the first degree charges, was nevertheless proper. However, the circuit court merely told the jury to "consider the evidence relating to . . . defense of others, in deciding whether defendant's conduct created an unreasonable risk. . . . If the defendant was acting lawfully . . . in defense of others, his conduct did not create an unreasonable risk to another." We do not agree that this was adequate: the instruction on the State's burden of proof is wholly omitted. Thus, the instructions are erroneous.

Austin, 349 Wis. 2d 744, ¶19.

¶83 The majority asserts that Austin is distinguishable from the instant case because in Austin, there was no burden of proof instruction on self-defense at all.[10] The majority's reasoning pays too little attention to how the court of appeals dealt with the defense-of-others instruction at issue in Austin and how the logic of that reasoning applies in the instant case.

¶84 In Austin, with regard to the first-degree charge, the circuit court properly instructed the jury on both the substantive law applicable to the defense-of-others defense and the applicable burden of proof (i.e., the State bears the burden of proving beyond a reasonable doubt that Austin was not acting lawfully in the defense of others). However, when instructing the jury on the second-degree charge, the circuit court did not

---

[10] Majority op., ¶47 n.24.

6

repeat the instruction. The court of appeals held that the defense-of-others instruction for the second-degree charge was inadequate because "the instruction on the State's burden of proof [was] wholly omitted."[11] The court of appeals reached this conclusion despite the fact that the State's burden of proof related to defense-of-others was properly explained by the circuit court in its instructions on the first-degree charge.

¶85 The similarities between <u>Austin</u> and the instant case are striking.

¶86 In <u>Austin</u>, the jury was instructed to consider the second-degree charge only if it found Austin not guilty of the first-degree charge, and both charges had their own sets of applicable instructions. In the instant case, the jury was instructed to consider the charge of homicide by negligent handling of a dangerous weapon only if it found the defendant not guilty of both first- and second-degree reckless homicide, and all three charges had their own sets of applicable instructions.

¶87 In <u>Austin</u>, while instructing the jury on the first-degree charge, the circuit court properly explained the State's burden of proof related to the defense-of-others defense, but it did not repeat the burden of proof applicable to that defense when instructing the jury on second-degree charge. In the instant case, while instructing the jury on the charges of first- and second-degree reckless homicide, the circuit court

---

[11] <u>Austin</u>, 349 Wis. 2d 744, ¶19.

7

properly explained the State's burden of proof related to self-defense, but it did not repeat the burden of proof applicable to that defense when instructing the jury on the charge of homicide by negligent handling of a dangerous weapon.

¶88 As was the case in Austin, the error in not repeating the burden of proof instruction when instructing the jury on the charge of homicide by negligent handling of a dangerous weapon was compounded by the fact that the correct instruction was given when the circuit court instructed the jury on the first- and second-degree reckless homicide charges. It is the juxtaposition between those instructions coupled with the fact that the jury was to consider each charge individually, moving to a lesser-included charge only if it found the defendant not guilty of the more serious charge, that creates confusion and results in erroneous instructions.

II

¶89 The majority asserts that because the circuit court stated "As I previously indicated" while repeating parts of the self-defense instruction applicable to the charge of homicide by negligent handling of a dangerous weapon, the circuit court "incorporated by reference its initial instruction on self-defense," thereby "remind[ing]" the jury "that the initial instruction, recited in the context of reckless homicide, applied equally to the context of negligent homicide."[12]

---

[12] Majority op., ¶44.

8

¶90 How could the majority have reached this conclusion? Simply reading the circuit court's statements in context reveals the absurdity of the majority's reasoning. Ask yourself: To what specifically is the circuit court referring when it says, "As I previously indicated"?

¶91 The circuit court stated "As I previously indicated" on two occasions when instructing the jury on self-defense applicable to the charge of homicide by negligent handling of a dangerous weapon.

¶92 The circuit court first stated, "As I previously indicated, <u>the law of self defense allows the Defendant to threaten or intentionally use force against another only if the Defendant believed that there was an actual or [imminent] unlawful interference with the Defendant's person and the Defendant believed that the amount of force the Defendant used or threatened to use was necessary to prevent or terminate the interference and the Defendant's beliefs were reasonable.</u>"[13] The underlined portion of the circuit court's statement is what was "previously indicated." Nowhere does the circuit court mention the burden of proof. The circuit court said nothing to indicate "that the initial instruction, recited in the context of reckless homicide, applied equally to the context of negligent homicide."[14]

---

[13] Majority op., ¶26 (emphasis added).

[14] Majority op., ¶44.

9

¶93 The circuit court again stated, "And as I previously indicated, <u>a belief may be reasonable even though mistaken. In determining whether the Defendant's beliefs were reasonable, the standard is what a person of ordinary intelligence and prudence would have believed in the Defendant's position under the circumstances that existed at the time of the alleged offense.</u>"[15] Again, the underlined portion of the circuit court's statement is what was "previously indicated." Again, nowhere does the circuit court mention the burden of proof or inform the jury that the previous self-defense instructions that applied to the charges of first- and second-degree reckless homicide "applied equally to the context of negligent homicide."[16]

¶94 I agree with Presiding Judge Reilly that "[t]he majority's suggestion that the court's use of the phrase '[a]s I previously indicated' incorporated the court's instruction on the law of self-defense applicable to first- and second-degree reckless homicide is an erroneous invitation that juries may search out laws applicable to other crimes so as to convict on a crime under deliberation." State v. Langlois, 2017 WI App 44, ¶56, 377 Wis. 2d 302, 901 N.W.2d 768 (Reilly, P.J., dissenting).

III

¶95 The majority's erroneous conclusion hangs by one final thread. The majority asserts that the general instruction on the State's burden to establish guilt beyond a reasonable doubt

---

[15] Majority op., ¶26 (emphasis added).

[16] Majority op., ¶44.

10

corrected any possible confusion regarding the burden of proof applicable to self-defense on the charge of homicide by negligent handling of a dangerous weapon.[17]  The majority states:

> Because self-defense is a negative defense, the State disproves self-defense beyond a reasonable doubt if it proves the elements of the crime beyond a reasonable doubt, specifically criminal negligence.  Therefore, the jury was aware that the State had to prove criminal negligence——the element that self-defense would negate——beyond a reasonable doubt

Majority op., ¶45.

¶96  The majority's reasoning is flawed for at least two reasons.

¶97  First, if the majority's "negative defense" theory is correct, then it appears to follow necessarily that the circuit court did not need to instruct the jury on the burden of proof applicable to self-defense at all because the applicable burden of proof would be discernable from the circuit court's general burden-of-proof instruction and the instructions regarding the elements of the charged crimes, specifically the elements of recklessness or criminal negligence.

¶98  But the fact remains that the circuit court did instruct the jury on the burden of proof for self-defense for the first- and second-degree reckless homicide charges, but not for the homicide by negligent handling of a dangerous weapon charge.  Because each charge was to be considered independently from the other charges and each charge bore its own separate set

---

[17] Majority op., ¶45.

11

of instructions, the juxtaposition of those different self-defense instructions creates confusion.

¶99 To avoid confusion (and assuming the majority's "negative defense" theory is correct), the circuit court should either have not instructed on the burden of proof for self-defense applicable to any of the three charges, or it should have provided one complete and accurate instruction for self-defense while telling the jury that the instruction applied to all three charges. By inconsistently repeating certain elements of the self-defense instruction but not others, the circuit court created confusing and erroneous jury instructions.

¶100 Second, the argument advanced by the majority was made and rejected by the court of appeals in Austin. The circuit court in Austin also gave the general burden of proof instruction,[18] and the State argued that because self-defense negated the "recklessness" element of the charges at issue, the fact that the circuit court wholly omitted an instruction on the burden of proof applicable to self-defense was not erroneous.[19]

¶101 The Austin court of appeals, unpersuaded by the State's argument, held that "when a defendant successfully makes self-defense an issue, the jury must be instructed as to the

---

[18] Brief and Appendix of Defendant-Appellant at 14, State v. Austin, 2013 WI App 96, 349 Wis. 2d 744, 836 N.W.2d 833 (No. 2012AP11-CR), 2012 WL 2420866, at *14 (Wis. Ct. App. June 6, 2012).

[19] See Brief of Plaintiff-Respondent at 8-9, State v. Austin, 2013 WI App 96, 349 Wis. 2d 744, 836 N.W.2d 833 (No. 2012AP11-CR), 2012 WL 4121196, *8-9 (Wis. Ct. App. Sept. 6, 2012).

State's burden of proof regarding the nature of the crime, even if the defense is a negative defense." Austin, 349 Wis. 2d 744, ¶16 (citing State v. Schulz, 102 Wis. 2d 423, 429-30, 307 N.W.2d 151 (1981), and State v. Pettit, 171 Wis. 2d 627, 640, 492 N.W.2d 633 (Ct. App. 1992)); see also Austin, 349 Wis. 2d 744, ¶17 (explaining that, by itself, Wis JI——Criminal 801 "implies that the defendant must satisfy the jury that he was acting in self-defense").

¶102 The majority does not overrule Austin or even acknowledge that its reasoning conflicts with Austin. Can the majority square its reasoning in paragraph 45 with the court of appeals decision in Austin? I do not think that it can, and Austin provides the more persuasive resolution of the issue.

IV

¶103 Finally, following Austin, I conclude that the defendant is entitled to a new trial in the interest of justice regardless of whether he was prejudiced as a result of trial counsel's failure to object to the circuit court's erroneous jury instructions.[20] In my view, a Machner hearing is not necessary.

¶104 Similar to the instant case, the jury instruction issue in Austin was addressed in the context of Austin's ineffective assistance of counsel claim. However, instead of

---

[20] Wisconsin Stat. § 751.06 permits the court to order a new trial "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried . . . ."

13

remanding the case to the circuit court for a <u>Machner</u> hearing or determining whether Austin had shown prejudice, the court of appeals instead ordered a new trial in the interest of justice.

¶105 In reaching its conclusion that a new trial in the interest of justice was appropriate, the court of appeals discussed the differing bases upon which the jury might have relied in reaching its conclusion to acquit Austin of the first-degree charge, but convict him of the second-degree charge. The court of appeals stated that it "[did] not know what difference, if any, a proper instruction on self-defense would have made[,]" and "[g]iven these uncertainties regarding the verdict, [the court of appeals was] not confident that counsel's lack of objection [to the erroneous jury instructions] did not result in prejudice."[21]

¶106 Under these circumstances, the court of appeals found it unnecessary to remand the case for a <u>Machner</u> hearing. The court explained its reasoning as follows:

> It is undisputed that Austin stabbed both victims. The only real issue was whether Austin was properly acting in his or his cousin's defense. By not properly instructing the jury, the circuit court failed to provide it with the proper framework for analyzing that question. Thus, regardless of whether trial counsel's performance was prejudicial, we conclude this is one of those very limited instances in which we must reverse and remand for a new trial in the interests of justice.

<u>Austin</u>, 349 Wis. 2d 744, ¶23.

---

[21] <u>Austin</u>, 349 Wis. 2d 744, ¶22.

14

¶107 The logic and reasoning of the court of appeals in Austin applies with equal persuasive force in the instant case.

¶108 As in Austin, it is not clear in the instant case how the jury reached its conclusion that the defendant should be acquitted of the first- and second-degree reckless homicide charges, but convicted of the charge of homicide by negligent handling of a dangerous weapon. Indeed, it seems nigh impossible to know whether or not the jury would have reached a different result if it had been instructed properly. Moreover, as in Austin, it is undisputed that the defendant stabbed his brother. The only real issue is whether the defendant was acting properly in self-defense or whether the stabbing was an accident.

¶109 By not properly instructing the jury, the circuit court failed to provide the jury with the proper framework for deciding the only disputed issues in the instant case. Thus, I conclude that regardless of whether trial counsel's performance was prejudicial to the defendant, the instant case presents "one of those very limited instances" in which a new trial in the interest of justice is appropriate.

V

¶110 It is unwise to conclude "that a jury may utilize instructions for crimes not under consideration to fix erroneous instructions for the crime under consideration."[22] This reasoning was correctly rejected by the court of appeals in

---

[22] Langlois, 377 Wis. 2d 302, ¶52 (Reilly, P.J., dissenting).

15

Austin, and Austin should be followed in the instant case. Consistent with the court of appeals decision in Austin, I would grant the defendant a new trial in the interest of justice because the nature of the circuit court's error is such that the error's prejudicial effect is effectively unknowable.

¶111 For the foregoing reasons, I dissent.

¶112 REBECCA GRASSL BRADLEY, J. *(dissenting).* The State charged Jacob Langlois with first-degree reckless homicide while using a dangerous weapon, but at trial, the State asked the circuit court to also instruct the jury on two lesser-included offenses: (1) second-degree reckless homicide while using a dangerous weapon; and (2) homicide by negligent handling of a dangerous weapon. Langlois claimed he killed his brother by accident or in self-defense. The circuit court chose to give separate self-defense instructions for first-degree reckless homicide and negligent homicide. The self-defense instruction given for first-degree reckless homicide accurately stated the law, advising the jury that the State had the burden "to prove beyond a reasonable doubt that the defendant did not act lawfully in self defense."

¶113 The self-defense instruction given for negligent homicide, however, completely omitted the State's burden. The instructions on negligent homicide left out the following paragraph:

> You should consider the evidence relating to self-defense in deciding whether the defendant's conduct created an unreasonable risk to another. If the defendant was acting lawfully in self-defense, his conduct did not create an unreasonable risk to another. <u>The burden is on the state to prove beyond a reasonable doubt that the defendant did not act lawfully in self defense.</u> And, you must be satisfied beyond a reasonable doubt from all the evidence in the case that the risk was unreasonable.

(Emphasis added.) The omission of this part of the instructions for negligent homicide means the court failed to inform the jury

that the State bore the burden of proving that Langlois was not acting in self-defense. The majority holds that because this language appeared earlier in the instructions regarding first-degree reckless homicide, the jury must have gone back to those earlier instructions, plucked the missing language out, and applied the proper burden when it convicted Langlois of negligent homicide. I disagree. Experienced lawyers may be capable of sifting and winnowing through erroneous instructions in order to assemble the correct ones when considering the third level of charges, but lay jurors certainly are not.

I

¶114 Here, the instructions were divided into three parts——one part for each of the crimes for which Langlois could be convicted. As Court of Appeals Judge Paul Reilly noted in his dissenting opinion, the circuit court could have chosen to give a single self-defense instruction and advised the jurors it must be considered when evaluating each of the three crimes. See State v. Langlois, 2017 WI App 44, ¶56, 377 Wis. 2d 302, 901 N.W.2d 768 (Reilly, P.J. dissenting) ("The court could have given one complete, proper instruction on self-defense and told the jury that it applied to all three crimes, but it did not do so."). This court is left to evaluate what the circuit court did do.

¶115 Part I of the jury instructions, which addressed first-degree reckless homicide, correctly stated the law and the burden of proof on self-defense. The last two paragraphs within

the first-degree reckless homicide instructions directed the jurors as follows:

> If you are not satisfied beyond a reasonable doubt that the defendant caused the death of Jacob Langlois by criminally reckless conduct and that the circumstances of the conduct showed utter disregard for human life, you must not find the defendant guilty of First Degree Reckless Homicide and you should then consider whether the defendant is guilty of Second Degree Reckless Homicide in violation of § 940.06 of the Criminal Code of Wisconsin, which is a lesser included offense of First Degree Reckless Homicide.

> You should make every reasonable effort to agree unanimously on the charge of First Degree Reckless Homicide before considering the offense of Second Degree Reckless Homicide. However, if after full and complete consideration of the evidence, you conclude that further deliberation would not result in unanimous agreement on the charge of First Degree Reckless Homicide, you should consider whether the defendant is guilty of Second Degree Reckless Homicide.

¶116 In other words, the jurors were instructed that if they could not unanimously agree that Langlois committed first-degree reckless homicide, they were to set that offense and its instructions aside and move on to the lesser-included offense of second-degree reckless homicide.

¶117 Part II of the instructions addressed second-degree reckless homicide with substantively the same two paragraphs at the end of this part as well:

> If you are not satisfied beyond a reasonable doubt that the defendant caused the death of Jacob Langlois by criminally reckless conduct, you must not find the defendant guilty of Second Degree Reckless Homicide and you should then consider whether the defendant is guilty of Homicide by Negligent Handling of a Dangerous Weapon in violation of § 940.08 of the Criminal Code of Wisconsin, which is a lesser included

3

offense of both First and Second Degree Reckless Homicide.

You should make every reasonable effort to agree unanimously on the charge of Second Degree Reckless Homicide before considering the offense of Homicide by Negligent Handling of a Dangerous Weapon. However, if after full and complete consideration of the evidence, you conclude that further deliberation would not result in unanimous agreement on the charge of Second Degree Reckless Homicide, you should consider whether the defendant is guilty of Homicide by Negligent Handling of a Dangerous Weapon.

¶118 Thus, the jurors were directed to move on to the next lesser-included offense if they could not unanimously agree that Langlois was guilty of second-degree reckless homicide. As Judge Reilly points out in his dissent: "The jury found Langlois not guilty of both first- and second-degree reckless homicide, and therefore the instructions (the law) on those two charges were no longer before the jury." Langlois, 377 Wis. 2d 302, ¶53 (Reilly, P.J., dissenting).

¶119 This left the jury to consider the instructions (the law) contained under the umbrella of the negligent homicide instruction, which was missing the paragraph setting out the burden of proof regarding self-defense. Therein lies the problem.

II

¶120 It is important to note that Langlois' trial lawyer failed to object to this blatant error in the jury instructions, which places this case under an ineffective assistance of counsel framework of review. See State v. Carprue, 2004 WI 111, ¶¶36-47, 274 Wis. 2d 656, 683 N.W.2d 31 ("The absence of any objection warrants that we follow 'the normal procedure in

4

criminal cases,'" which is to address the alleged error "within the rubric of the ineffective assistance of counsel." (quoted and cited sources omitted)); see also Kimmelman v. Morrison, 477 U.S. 365, 374-75 (1986) (holding that in absence of objection, error should be analyzed under ineffective-assistance-of-counsel standards, even when error is of constitutional dimension (citing Strickland v. Washington, 466 U.S. at 688 (1984)).

¶121 Generally, when a defendant's trial lawyer fails to object to an erroneous jury instruction, this court applies the harmless error test. See State v. Gordon, 2003 WI 69, ¶5, 262 Wis. 2d 380, 663 N.W.2d 765 (holding that the omission of element of crime from jury instruction subject to harmless error test (citing Neder v. United States, 527 U.S. 1 (1999))); see also State v. Harvey, 2002 WI 93, ¶¶47-49, 254 Wis. 2d 442, 647 N.W.2d 189.

¶122 Neder explained that while a "limited class" of errors is deemed "structural," requiring "automatic reversal,"[1] most errors, including constitutional ones, are reviewed for harmlessness. Neder, 527 U.S. at 8. Most jury instruction errors are "trial errors," which will not be presumed prejudicial. See Scarpa v. Dubois, 38 F.3d 1, 14 (1st Cir. 1994). For example, the First Circuit Court of Appeals in

---

[1] Neder gave the following examples of errors resulting in automatic prejudice: complete denial of counsel; a biased circuit court; racial discrimination in the selection of a grand jury; denial of self-representation at trial; denial of public trial; or a defective reasonable doubt instruction. Neder v. United States, 527 U.S. 1, 8 (1999).

5

*Scarpa* lists instances of jury instruction errors falling into the "trial error" category, including: "overbroad jury instructions used during the sentencing stage of a capital case [and] jury instructions containing an erroneous (but rebuttable) presumption . . . ." *Id.* at 14 (first citing *Clemons v. Mississippi*, 494 U.S. 738, 752 (1990); then citing *Carella v. California*, 491 U.S. 263, 266-67 (1989)).

¶123 Jury instruction errors falling into the "structural error" category and requiring automatic reversal are rare. I located only one——failure to give a constitutionally sufficient "reasonable doubt" instruction. See *Sullivan v. Louisiana*, 508 U.S. 275, 281-82 (1993). *Sullivan* held that when there is a reasonable likelihood a jury does not believe it needs proof beyond a reasonable doubt to find the defendant guilty, the erroneous instruction is a "structural error" that may not be cured through a harmless error analysis. *Id.*

¶124 The jury instruction error here falls into the same category as the error in *Sullivan*——the jury was not told with respect to negligent homicide that the State must prove beyond a reasonable doubt that the defendant did not act lawfully in self-defense.

¶125 This case, therefore, presents a jury instruction error distinguishable from those in *Neder*, *Gordon*, and *Harvey*, and one that requires automatic reversal. This error "infect[ed] the entire trial process" and "necessarily render[ed the] trial fundamentally unfair." *Harvey*, 254 Wis. 2d 442, ¶37 (quoting *Neder*, 527 U.S. at 8). Stated otherwise, this error

deprived Langlois of his "'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . .'" Id. When the jury instruction error is structural, its harmfulness "can be conclusively presumed." Scarpa, 38 F.3d at 14.

¶126 It is a fundamental tenet of our criminal justice system that a defendant is innocent until proven guilty. The State and the State alone bears the burden of proving a defendant guilty beyond a reasonable doubt. As Justice Antonin Scalia explained in Sullivan, writing for a unanimous court:

> What the factfinder must determine to return a verdict of guilty is prescribed by the Due Process Clause. The prosecution bears the burden of proving all elements of the offense charged, see, e.g., Patterson v. New York, 432 U.S. 197, 210 (1977); Leland v. Oregon, 343 U.S. 790, 795 (1952), and must persuade the factfinder "beyond a reasonable doubt" of the facts necessary to establish each of those elements, see, e.g., In re Winship, 397 U.S. 358, 364 (1970); Cool v. United States, 409 U.S. 100, 104 (1972) (per curiam). This beyond-a-reasonable-doubt requirement, which was adhered to by virtually all common-law jurisdictions, applies in state as well as federal proceedings. Winship, supra.

508 U.S. at 277-78.

¶127 The United States Supreme Court concluded in Sullivan that an erroneous beyond-a-reasonable-doubt instruction constitutes a structural error requiring automatic reversal because "a misdescription of the burden of proof . . . vitiates all the jury's findings." Id. at 281. The Court explained that this type of instructional error cannot be evaluated under the harmless error test because, unlike a trial error, which can "be quantitatively assessed in the context of other evidence

7

presented," the "precise effects" of the "[d]enial of the right to a jury verdict of guilt beyond a reasonable doubt" are "unmeasurable." Id. "The deprivation of that right, with consequences that are necessarily unquantifiable and indeterminate" renders the jury instruction error a structural one. Id. at 281-82.

¶128 The instructional error involved in Langlois' case is similar, if not more grievous, than in Sullivan. The circuit court instructed the jury that the State had the requisite burden with respect to first-degree reckless homicide, but the jury was not told that the State had that burden with respect to negligent homicide. The jury found Langlois not guilty on first- and second-degree reckless homicide, but convicted him of negligent homicide. It is a juror's job to follow the law as instructed by the circuit court. The circuit court here, however, failed to properly instruct this jury. It told the jurors that the State had the burden of proving beyond a reasonable doubt that Langlois did not act in self-defense with respect to first-degree reckless homicide, but it did not give the basic, but critically important instruction on the burden of proof with respect to negligent homicide. Perhaps those trained in the law could parse out these jury instructions, jump back through five pages of law, and import the missing part into the negligent homicide analysis, but the average juror could not and would not. I agree with Judge Reilly that it is "disingenuous and illogical that the majority believes that a jury may utilize instructions for crimes not under consideration to fix erroneous

8

instructions for the crime under consideration." Langlois, 377 Wis. 2d 302, ¶52 (Reilly, P.J., dissenting).

¶129 The jurors are told to follow the instructions, and we presume they do so. See State v. Truax, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989). The instructions to the jurors in this case told them to move on to the next lesser-included offense if they could not agree as to guilt on the charged crime under consideration. When the jury moved on to negligent homicide, it found a constitutionally deficient self-defense instruction. Because the instruction wholly omitted the beyond-a-reasonable-doubt standard, the jury could not properly assess whether the State proved beyond a reasonable doubt that Langlois did not act in self-defense. Or, worse yet, the jury could have believed the State did not have any burden at all for disproving self-defense with respect to the negligent homicide charge.

¶130 Although jury instructions rarely rise to the level of structural error, automatic reversal is warranted when the error was wholesale omission of the State's burden of proof as to self-defense for the lesser-included charge on which the jury convicted Langlois. See State v. Austin, 2013 WI App 96, ¶¶12, 23, 349 Wis. 2d 744, 836 N.W.2d 833 (ordering a new trial despite defense lawyer's failure to object to erroneous jury instruction because "[b]y not properly instructing the jury" that "the burden is on the State to disprove the [defendant's claim of self-]defense beyond a reasonable doubt" "the circuit court failed to provide it with the proper framework for analyzing that question").

9

¶131 Because the trial court's faulty instructions to the jury constitute structural error requiring automatic reversal, I would reverse the court of appeals and remand for a new trial. I respectfully dissent.[2]

---

[2] The accident instruction also was erroneous, but I need not address that error based on my conclusion that the erroneous burden of proof instruction warrants automatic reversal.